## SUPREME COURT — APPELLATE DIVISION — SECOND DEPARTMENT.

### December 14, 1917.

## THE PEOPLE v. TITLE GUARANTEE AND TRUST COMPANY.

(180 App. Div. 648.)

1. CORPORATIONS PRACTICING LAW *—PENAL LAW, § 280.

A title guarantee and trust company, which draws bills of sale, and chattel mortgages, with the advice necessarily attending, practices law, in violation of section 280 of the Penal Law.

Said company is not excluded from the operation of the statute because it has chartered power to examine and insure titles to real property.

2. SAME—EVIDENCE OF ACTS OF LIKE CHARACTER.

Where a corporation is charged with the violation of section 280 of the Penal Law in holding itself out to the public as being entitled to practice law, other acts of like nature are relevant as showing a general course.

3. SAME.

When such corporation claims that the act charged was contrary to its will and direction, other acts of a like character may be shown as bearing on the authorization of the corporate agent.

4. SAME—EVIDENCE OF DETECTIVES.

Evidence secured against such a corporation by private detectives is sufficient to sustain a conviction, where the defendant fails to call as witnesses its employees who participated in the acts.

5. SAME—TRIAL BY INDICTMENT.

Order denying motion for a certificate that it was reasonable that the charge be further prosecuted by indictment approved.

PUTNAM, J., dissented, with opinion.

APPEAL by the defendant, Title Guarantee and Trust Company, from a judgment of the Court of Special Sessions of the city of New York, Part Two, entered on the 27th day of November, 1916, convicting it of a misdemeanor in violating section

* See Note ante, p. 207.

280 of the Penal Law, with notice of an intention to bring up for review an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 21st day of October, 1916, denying defendant's motion for a certificate that the crime charged in the information be prosecuted by indictment, and that the defendant be accorded a jury trial.

*James P. Judge,* for the appellant.

*Ralph E. Hemstreet, Assistant District Attorney (Harry E. Lewis, District Attorney,* and *Harry G. Anderson, Assistant District Attorney,* with him on the brief), for the respondent.

BLACKMAR, J.:

On June 27, 1916, the district attorney of Kings county filed an information which, among other things, charged that the defendant " held itself to the public as being entitled to practice law, and to render and furnish legal services and advice, and furnish attorneys and counsel and render legal service and advice to Louis Singer, in connection with the drawing of a bill of sale and chattel mortgage."

Section 280 of the Penal Law (added by Laws of 1909, chap. 483, as amd. by Laws of 1911, chap. 317, and Laws of 1916, chap. 254, entitled " Corporations and voluntary associations not to practice law ") among other prohibitions forbade a corporation to do the things charged in the information. A motion was made in the Supreme Court for a certificate that it was reasonable that the charge be further prosecuted by indictment. Such motion was denied. The case came on for trial before the Court of Special Sessions on October 27, 1916. The defendant was found guilty, and a fine of $1,000 was imposed. From this judgment the defendant appeals, and gives notice that it will bring up for review the order denying the motion that the charge be prosecuted by indictment.

It appeared that on November 29, 1915, one Louis Singer, on the direction of a detective employed by a committee of the Brooklyn Bar Association, visited the office of the defendant with one Pascal, introduced there as Mr. Bishop, and at their request a bill of sale of articles of personal property and a chattel mortgage thereon was prepared by employees of the defendant, for which he paid the said corporation the sum of six dollars and received a receipt therefor.   There was also introduced in evidence a pamphlet taken from a desk in the defendant's office, which contained a schedule of charges for drawing legal documents, most of them relating to real property, but including bills of sale.   It was also shown that upon December 6, 1915, a power of attorney, release and receipt were prepared by defendant's employees, for which defendant charged and received four dollars and three dollars respectively. It was claimed by the People, and held by the court, that the evidence showed the commission of the offense forbidden by section 280 of the Penal Law.

It is claimed by the appellant that the offense at which the said section of the Penal Law is directed is a corporation practicing law; that this involves only such acts and services as attorneys and counselors are authorized to perform by virtue of their office, and that this embraces only appearing in court by counselors and representing clients in actions and legal proceedings by attorneys at law.   We think that the view that the prohibition of the statute is so limited cannot prevail.   It is true that at the time the judgment was entered it was not illegal for natural persons to perform all acts usually intrusted to lawyers except to represent clients before judicial tribunals.   These things are constantly done; and, especially in rural districts, wills, deeds and instruments creating legal obligations are commonly drawn by draftsmen who are not members of the bar. The prohibition of the statute under consideration is directed to corporations and voluntary associations, and not natural persons.

These artificial persons must act through agents, and if they practice law, they do it through their own paid employees. Such employees owe their primary duty to the employing corporation. As was said by Judge VANN in Matter of Co-operative Law Co. (198 N. Y. 483): " The relation of attorney and client is that of master and servant in a limited and dignified sense, and it involves the highest trust and confidence. It cannot be delegated without consent and it cannot exist between an attorney employed by a corporation to practice law for it, and a client of the corporation, for he would be subject to the directions of the corporation and not to the directions of the client." The vice is that the employee of the corporation, serving it for pay, owes his duty to the corporation. As he cannot serve two masters, so he cannot serve both the client and his corporation employer.

This reason applies, not only to services of attorney and counsel in the matter of litigation, but to those other services which are usually performed by lawyers, which involve professional trust and confidence, knowledge of the law, and skill, born of experience, in its application. The practice of the law, as the term is now commonly used, embraces much more than the conduct of litigation. The greater, more responsible and delicate part of a lawyer's work is in other directions. Drafting instruments creating trusts, formulating contracts, drawing wills and negotiations, all require legal knowledge and power of adaptation of the highest order. Beside these employments, mere skill in trying law suits, where ready wit and natural resources often prevail against profound knowledge of the law, is a relatively unimportant part of a lawyer's work.

We think the statute was formulated to include those departments of legal work. The words of the statute — " legal services of any kind in actions or proceedings of any nature or in any other way or manner " — are comprehensive enough to embrace other legal services than those connected with litigation.

We think, moreover, that the statute has been authoritatively so construed in this and other jurisdictions. In Matter of Pace (170 App. Div. 818), Mr. Justice Scott, writing for the court, said (p. 826) : " It would be absurd to hold that the preparation of the papers requisite for the incorporation of a company and the incidental advice necessarily given in connection therewith do not call for legal services and are not included within the definition of the ' practice of law; ' " and this court, in the First Department, held in accordance with such expression of opinion. In Matter of Duncan (83 S. C. 186) it was held that where a disbarred attorney acted for pay in obtaining the release of a prisoner from a chain gang, he was practicing law, and subject to contempt proceedings. In Eley v. Miller (7 Ind. App. 529) it was held that where a county auditor for pay drew a contract and bond, he was practicing law contrary to the statute. Savings Bank v. Ward (100 U. S. 195) concerned a certificate that a title to real property was good; and the court decided the case on the proposition that examining the title and giving the certificate was practicing law. The prevailing opinion contains the oft-quoted clause (p. 199) : " Persons acting professionally in legal formalities, negotiations, or proceedings by the warrant or authority of their clients may be regarded as attorneys-at-law within the meaning of that designation as used in this country."

In the case at bar a bill of sale of a store and a chattel mortgage thereon for part of the purchase price were drawn. This is work which is usually done by lawyers. It may not require as deep legal knowledge as the organization of a corporation, although both are sometimes done by the use of printed blanks which can be bought at a stationery shop; but there are questions of law which surround passing title to property and securing rights under a chattel mortgage. Advice as to change of possession of the chattels and filing the mortgage should be given, and if it was not given in this case it furnishes another illustra-

tion of the reason why such work should not be done by employees of a corporation. It may be hard to draw the line and determine exactly what work falls within the condemnation of the statute, but we do not doubt that drawing bills of sale and chattel mortgages, with the advice necessarily attending, constitute legal services, and are included in the term practicing law.

The appellant also claims that it is excluded from the operation of the statute because it has chartered power to examine and insure titles to real property. If the appellant's contention is correct, it may, so far as the prohibition of the statute is concerned, act in the general practice of the law. Surely the Legislature never so intended, and an examination of the words of the act shows that it did not so provide. The language is: " This section shall not apply to any corporation or voluntary association lawfully engaged in a business authorized by the provisions of any existing statute, nor to a corporation or voluntary association lawfully engaged in the examination and insuring of titles to real property." If this section does not apply to the defendant because it is (sometimes) engaged in the examination and insuring of titles to real property, neither does it apply to any corporation or voluntary association which is (sometimes) lawfully engaged in a business authorized by the provisions of any existing statute. But every corporation which does any business under its charter is lawfully so engaged. It follows that appellant's contention necessarily leads to the absurd conclusion that the statute does not apply to any corporation lawfully doing business under its charter. In other words, the excepting clause excepts all corporations and voluntary associations, and the statute has no application whatever. The plain meaning of the statute is that the section does not apply to the defendant while engaged in examining and insuring titles to real property, but does apply while doing work *ultra vires* of its charter; and no corporation has chartered power to practice law. When doing the work which is the subject of this infor-

mation, it was not engaged in examination and insurance of titles to real property, and, therefore, the section does apply.

As an element of the crime charged in the information is that the corporation held itself out to the public as being entitled to practice law, other acts of the like nature are relevant as showing a general course, and the objection and exception of defendant to such evidence are not valid. In fact, we think that other evidence of the same general nature, which was stricken out, might well have been retained. This evidence was rendered relevant also by the claim made by defendant that the services rendered to Singer were contrary to the will and direction of the corporation. When a defendant corporation claims that the act charged was contrary to such will and direction, other acts of a like character may be shown in evidence as bearing on authorization of the corporate agent. (People v. Molineux, 168 N. Y. 264; People v. Grutz, 212 id. 72; People v. Duffy, Id. 57.)

The defendant also objects that the evidence was obtained by a detective employed for that purpose. If there had been an issue of fact as to what was actually done, this objection might have had great weight as directed to the character and sufficiency of the evidence of paid detectives. It is a question of the weight of evidence only; and whatever weight was lacking to the evidence introduced by the People was supplied by the failure of the defendant to call as witnesses its employees who participated in the acts.

We approve also the decision of the Supreme Court at Special Term in denying the motion for a certificate that it was reasonable that the charge be further prosecuted by indictment, if for no other reason, for this: That the question in this case is practically a question of law on the construction of the statute. It is reasonable that such questions be decided by trained lawyers, when possible.

The judgment of conviction of the Court of Special Sessions,

and order of Special Term denying motion for certificate, etc., should be affirmed.

MILLS and RICH, J. J., concurred; PUTNAM, J., read for reversal; STAPLETON, J., not voting.

PUTNAM, J. (dissenting):

The information charged that appellant " held itself to the public as being entitled to practice law, and to render and furnish legal services and advice, and furnish attorneys and counsel and render legal service and advice to Louis Singer, in connection with the drawing of a bill of sale and chattel mortgage, for which it accepted payment, and assumed to be entitled to practice law, and advertised that it had, owned, conducted and maintained a law office and an office for the practice of law and for furnishing legal advice, services and counsel." It does not appear that the Mr. Scully, mentioned as the person who drew up these papers, was an attorney at law, or that advice was given as to the legal effect of such documents. The prosecuting witness, Mr. Singer, received no professional advice beyond the obvious remark that the date left blank could be filled in when the papers should be executed before a notary.

I agree that section 280 of the Penal Law (in its form in 1915) goes further than to declare unlawful " the business of conducting litigation and providing counsel therefor," as in section 276. It deals with services out of court and even where there is no litigation. But such legal services there prohibited are those furnished in a manner to appear or assume to be those by an attorney at law. The terms repeated in the statute, " advice, services or counsel," refer to such acts as may trench upon, or at least be supposed to undertake, the office, duties, and functions of a member of the bar.

This reduces the questions to this: Did this statute forbid

a corporation to draw chattel mortgages, or bills of sale, for pay? Had that been the legislative purpose, it could have easily and plainly laid such a restriction on corporate acts. To support this conviction, we must hold that such work is prohibited as being the professional business of a lawyer. That contention is against all the history and tradition of the bar. The advocate had not the work of a conveyancer or draftsman. Such clerical labor was performed by a writer or scribe whom the civil law called *registarius actuarius* or *scrivarius*. Neither this scribe nor the notary public, though the latter had international recognition, was admitted to the ranks of professional lawyers. He was outside the *togatorum consortium*.

In England there was a difference between commercial instruments and land conveyances. An early authority says: " Many merchants doe make contracts and passe them likewise before notaries or scriveners because that things contracted for may require time to effect them." (Malynes Lex Mercatoria [ed. 1685], 123.) Preparation and execution of instruments to alienate land, and conveyancing in general, in London, were not even open for attorneys and solicitors to engage in before 1760, being theretofore a close monopoly of the Scriveners' Company. In that year an organized body of lawyers, called the " Society of Gentlemen Practisers in the Courts of Law and Equity," broke into this preserve, and gained a right also to draw such instruments. (11 Ency. Laws of Eng., " Solicitor," p. 574.)

The Scriveners' Company, however, long after maintained a strong hold on such business through its exclusive power to name and license notaries, who had to undergo an apprenticeship for seven years. (The King v. Scriveners' Co., 10 B. & C. 511; 21 E. C. L. 219.) Naturally these European usages do not obtain in this country. In New York certain officials were forbidden to appear or to practice in court. These were a judge (R. S. pt. 3, chap. 3, tit. 1, § 4), a sheriff (Id. pt. 1, chap. 5,

tit. 4, art. 2, § 27), also a constable who served either the original or the jury process (Id. pt. 3, chap. 2, tit. 4, art. 3, § 44). The present constitutional restraint on a judge of the higher courts is that he is not to " practice as an attorney or counselor in any court of record in this State, or act as referee." (Art. 6, § 20.) I cannot find in the provision of the Penal Law under which this prosecution is taken the intent to forbid the drawing up of the evidence of every day transactions, such as the buying and pledging of chattels, or even of sales of land (which should be equally simple and easy), or the ordinary papers which, especially in the country, are well prepared by justices of the peace, local conveyancers or men of good business experience whom no one has regarded as assuming to be entitled to practice law. Banks, insurance companies and other business corporations habitually prepare notes, bills of exchange, pledges of stock and like instruments. Their notaries extend marine protests on which follow instruments like bottomry bonds and agreements to contribute in general average. In like manner the acts of making out deeds, mortgages and conveyances of land with searches are done, and have long been done, by men not admitted to the bar. When Congress laid revenue duties on different pursuits and professions, it recognized the wide range of legal services by persons not attorneys at law. It grouped these under the name " conveyancers," which the act defined as " Every person, other than one having paid the special tax as a lawyer or claim agent, whose business it is to draw deeds, bonds, mortgages, wills, writs, or other legal papers, or to examine titles to real estate." (14 U. S. Stat. at Large, 118, § 9, amdg. 13 id. 254, § 79, subd. 26.)

After the lay public have been free to draw their own legal instruments, it would be strange at this time of day for the Legislature to restrict such work to the legal profession. It would in effect declare that our system of written transactions had grown too complex for the ordinary man — a reproach

which our Legislature is seeking to remove by establishing short forms of conveyancing.    (Laws of 1917, chap. 681, amdg. Real Prop. Law [Consol. Laws, chap. 50; Laws of 1909, chap 52], § 258.)

I agree that the Legislature may curb corporate powers.    But until it says so plainly, we should not find the drawing of these papers by appellant's clerks as prohibited.    Writing out forms for the sale or mortgage of chattels has never been held practicing law, nor is it one of the exclusive functions of members of the bar.    Hence I think no case, under section 280 of the Penal Law, was made out.

Judgment of conviction of the Court of Special Sessions and order of the Special Term denying motion for certificate, etc., affirmed.