## Shortz et al. v. Yetter et al.

*Arthur Silverblatt* and *Frank P. Slattery*, for plaintiffs.

*Frank P. Slattery, Jr.,* and *John H. Dando,* for defendants.

FARRELL, J., February 19, 1940.—Plaintiffs filed their bill December 4, 1939, complaining that defendants, neither of whom is a lawyer or a member of the bar, are engaged in the unlawful and unauthorized practice of the law, the first as author and the second as distributor of a certain pamphlet and of certain advertisements purporting to give legal advice and instructions in the drawing of wills and the management of decedents' estates; and further that Yetter "has for a long period of time practiced law by preparing and drafting wills and other legal instruments for his customers for valuable consideration and by consulting with and advising his customers as to their so-called legal rights."

The answer admits the authorship, publication, and distribution of the pamphlet and advertisements, denies that Yetter has practiced law by drawing wills and other legal instruments and consulting with customers, denies that the acts of authorship and publication constitute the practice of law by defendants and claims that said publications are lawful and privileged.

The issue raised is whether defendants, who are laymen, in their participation in said publications are engaged in the unlawful and unauthorized practice of the law.

## Findings of fact

1. Plaintiffs Edwin Shortz, Jr., Arthur Silverblatt, Joseph R. Sherman, Max Rosenn, Joseph L. O'Donnell, Herman B. Shepard, Roscoe B. Smith, and Stanley Jones, are lawyers and practitioners in good standing, members of the Luzerne County Bar, and constitute a duly-authorized committee to conduct this litigation on behalf of the Wilkes-Barre Law and Library Association, a nonprofit corporation organized and existing under the laws of the Commonwealth of Pennsylvania.

2. Neither Stanley M. Yetter, defendant, nor Harold A. Clark, defendant, is a member of the bar nor authorized to practice law.

3. Said Stanley M. Yetter sometime before the filing of plaintiffs' bill compiled, had printed, circulated, and sold to divers persons and institutions in Luzerne County and other parts of Pennsylvania a certain pamphlet entitled "A Practical Aid for Executors and Administrators of Decedents' Estates", containing a picture of Yetter and the following printed matter:

"Stanley M. Yetter,
Expert on Inheritance Tax

"Sixteen years experience in the highly technical and extremely important work of handling estates, caring for wills, documents and accounts.

"Eight years as the Register of Wills and Clerk of the Orphans' Court of Luzerne County, the third largest in Pennsylvania.

"Eight years as deputy in the same office of the register of wills.

"Organized Registers' Association of Pennsylvania. Elected first president and reëlected for six consecutive years.

"30,000 different estates of decedents have been handled by Mr. Yetter.

"The personal services of Stanley M. Yetter are available in the solution of problems arising in matters of inheritance tax. A request for interview or consultation. addressed to Stanley M. Yetter, 6 West Market Street, Wilkes-Barre, Pa., will receive prompt attention."

4. The first edition of said pamphlet, on page 32, contains the following printed matters:

"Take Advantage

"Of the Question and Answer Department Maintained by Stanley M. Yetter on the Problems Arising in the Executing and Administering the Affairs of an Estate.

"Mr. Yetter gives answers from his knowledge and wide experience on questions arising from wills, their composition, rights of heirs, problems of executors, administrators and inheritance tax, in fact on all matters pertaining to the estates of decedents and their beneficiaries.

"State your question plainly and forward together with a 3¢ self-adressed stamped envelope.

"Stanley M. Yetter
8 West Market Street,
Wilkes-Barre, Pennsylvania."

5. The second edition of said pamphlet contains on the inside of the back cover the following printed matter undeneath defendant Yetter's picture:

"May I take this opportunity to thank you for your purchase of this hand book. All instructions are authentic and according to existing estate laws. If there is anything in the contents of this hand book that is not quite clear to you, just write me a letter and I will explain your problem to the best of my ability."

6. Said pamphlet was printed on the press of the Courier Herald Publishing Company, no. 6 West Market

Street, Wilkes-Barre, Pa., of which defendant Yetter's brothers are proprietors.

7. The said Harold A. Clark, defendant, is and was at the time of the printing, advertising, circulation, and distribution of said pamphlet engaged as a distributor with office at said printing establishment, no. 6 West Market Street, in the City of Wilkes-Barre, Luzerne County.

8. Harold A. Clark, with the knowledge of Stanley M. Yetter, on March 19, 1939, and November 26, 1939, caused to be published in the Sunday Independent, a newspaper of general circulation, published in the City of Wilkes-Barre, on September 25, 1939, caused to be published in the Philadelphia Inquirer, a newspaper of general circulation published in the City of Philadelphia, and on October 23, 1939, caused to be published in the Wilkes-Barre Record, a newspaper of general circulation published in the City of Wilkes-Barre, the following advertisement:

"KILL THE WILL
And Estate Racket!
Handbook Explains All.

"Send today for Stanley M. Yetter's (16 years Register of Wills of Luzerne Co., Pa., 30,000 estates observed), clearly explained Will and Estate handbook.

"Gives Pennsylvania laws, tells what to do about taxes, bank accounts, stocks, bonds, insurance, real estate, family relations, heir rights, register's court costs, executors administrators duties, settle estate, etc., simply written, money saving facts.

"Included is a separate, correctly worded, legal will blank with instructions to write your own will in secret.

"Mail $1 or will send C. O. D.
Harold A. Clark, Distributor,
Six W. Market St., Wilkes-Barre, Pa.
Satisfaction or Money Back.
5th Floor —— Over Deemer's."

9. In pursuance of said publication, circulation and advertisement, there were twenty or twenty-five copies of the first edition of the book sold and several hundred copies of the second edition and about $1,100 received by defendants for said sales. The mailing list produced by Clark, defendant, at one of the hearings on December 16, 1939, showed that 3,693 of the pamphlets (second edition) were mailed, 1,169 returned, 2,046 still out and approximately 478 sold and paid for in various parts of the State to executors, administrators, banks, trust companies, justices of the peace, funeral directors, etc. Among the purchasers 668 cashiers and trust officers of banks and trust companies purchased the handbook. All of the amount received was paid for printing, postage, stationery, and there were no net profits for defendants.

10. Defendant Yetter, pursuant to appointment made by letter, following the publication, circulation, and advertisement of the pamphlet, was consulted by a female detective and advised her in the matter of drawing a will, purporting to be for her mother.

## Discussion

Stanley M. Yetter, one of the defendants, was for 16 years connected with the office of Register of Wills of Luzerne County, eight years as deputy register and eight years as elected register of wills for two full terms.

Desiring to capitalize his knowledge of wills and decedents' estates gained during his employment in and incumbency of the office of register of wills, he testified that he first got the idea of publishing a book on the subject of wills and decedents' estate in 1935. The first edition of the handbook was printed in that year by the Courier Herald Publishing Company, of which said defendant's brothers were the proprietors. The author, Stanley M. Yetter, in the circulation and sale of the pamphlet enlisted the aid of Harold A. Clark, the other defendant, who for some years had been employed in the shop or plant of the Courier Herald Publishing Company,

but whose sole occupation since September 1939 has been the publicizing and distribution of the Yetter handbook.

Shortly after the first edition was published in 1935 and put on the market, Stanley M. Yetter met with a committee of the Wilkes-Barre Law and Library Association, among the personnel being some of the present plaintiffs. The committee objected to certain passages appearing in the Yetter handbook on pages 1 and 2, which Yetter agreed to have struck out and which he gave his distributor Clark instructions to expunge from the second edition, which was done. A third edition was later published containing an addition consisting of questions and answers.

Yetter testified that it was not his intention to give legal advice to laymen but "only what was in the book"; that it was not his intention to give advice to the public in the handling of decedents' estates nor in the execution of legal papers and matters pertaining to decedents' estates. He claimed to have nothing to do with the insertion of the objectionable advertisements in the newspapers about "Killing the Will and Estate Racket", and has never solicited legal business. He denied that he drew a form of will purporting to be for the mother of Miss Elizabeth Clark, the female operative of the Rafter Detective Agency of Scranton, though he admitted that she had an interview with him by appointment; and he emphatically denied the allegation which she made against him that he took a fee of $5 for his advice and services.

As to this latter allegation we are making no finding of fact one way or the other, as, in the first place, it is oath against oath, and in the second place it is neither necessary nor relevant to the decision of the question of whether Yetter was practicing law whether he took the fee or not.

We are of the opinion that even upon the most liberal view of defendants' rights and upon the broadest interpretation of the privilege of free speech and free pub-

lication, we cannot escape the conclusion that the publication, circularizing, and sale of this pamphlet constituted an attempt unlawfully and unauthorizedly to practice law. When, added to this, Yetter held himself out as ready and willing to hold consultations with the purchasers of the pamphlet as to the drawing of wills and other matters pertaining to decedents' estates, there can be no doubt whatever that this was unauthorized practice of the law and brought him and his partner in the enterprise under the ban of the statutes passed to prevent such practices: Act of April 28, 1899, P. L. 117, as amended by the Act of April 24, 1933, P. L. 66, and the Act of July 12, 1935, P. L. 708.

The special knowledge and expert skill held out by Yetter in this publication as having been acquired by him during his experience of 16 years in the office of register of wills was such as is ordinarily acquired and employed only by lawyers in the practice of their profession; and if Yetter and his codefendant were permitted to give such service to the public without any of the professional responsibility by which the public is protected in the case of advice from authorized members of the bar, it would be a gross fraud and imposition on the public. This, we think, is so plain that it requires no extended argument or illustration.

Advice and instructions offered to the general public concerning the highly valuable right and privilege of making wills, and involving, as such advice and instructions necessarily do, important questions as to the descent and devolution of real and personal property, are unquestionably an important branch of the practice of law; and while a layman is privileged to draw his own will, and perhaps to offer advice in his own family or family circle, this is a far different thing from holding himself out as a competent and qualified adviser to the general public in matters of this nature. The public is entitled to be protected from such empirical advice.

Our Pennsylvania courts, as well as the courts of other States, have consistently refused to formulate a precise definition of the practice of the law. As was said by Mr. Justice Stern of our Supreme Court in Shortz et al. v. Farrell, 327 Pa. 81, "an attempt . . . would be more likely to invite criticism than to achieve clarity."

It is clear, however, that the "practice of law" includes much more than the appearance in court and conduct of litigation: People of N. Y. v. Title Guarantee & Trust Co., 180 App. Div. 648, 168 N. Y. Supp. 278.

"Injunction will lie to prevent any one, not duly qualified as an attorney at law, from representing any party, for hire, before the Public Utility Commission, from drafting contracts, wills, deeds, or other legal instruments, *or from furnishing legal service or advice for remuneration, or advertising in any manner that he is prepared or qualified to render legal service, from holding himself out in any manner as prepared or qualified so to perform*" (italics supplied) : Shortz, Jr., et al. v. Mooney, 32 Luz. L. R. Rep. 345; Childs et al. v. Smeltzer, 315 Pa. 9; Shortz et al. v. Farrell, supra.

A large body of cases in other jurisdictions announces this same principle. Among them might be cited the following: In re Morse, 98 Vt. 85, 126 Atl. 550, 36 A. L. R. 527; Rubin v. State, 194 Wis. 207, 216 N. W. 513; Unger, etc., v. Landlords' Management Corp., 114 N. J. Eq. 68, 168 Atl. 229; Fitchette et al. v. Taylor et al., 191 Minn. 582, 254 N. W. 910, 94 A. L. R. 356; Rhode Island Bar Assn. et al. v. Automobile Service Assn. et al., 55 R. I. 122, 179 Atl. 139, 100 A. L. R. 226; Depew et al. v. Wichita Association of Credit Men et al., 142 Kan. 403, 49 P.(2d) 1041; Meunier v. Bernich et al. (Ct. of App. La. 1936), 170 So. 567; State ex rel. v. Barlow, 131 Neb. 294, 268 N. W. 95; Richmond Association of Credit Men, Inc., v. Bar Association of City of Richmond et al., 167 Va. 327, 189 S. E. 153; Clark, etc., et al., v. Austin, 340 Mo. 467, 101 S. W.(2d) 977.

### Conclusions of law

Defendants, and each of them, in the publication, advertising, distribution, and sale of said pamphlet, as well as in holding themselves out to the public generally as qualified to give advice in the preparation of wills and in the handling of decedents' estates, are engaged in the unlawful and unauthorized practice of the law.

### Decree nisi

The prothonotary will enter and give notice of the following decree nisi:

Now, February 19, 1940, it is ordered, adjudged, and decreed:

1. That defendants, Stanley M. Yetter and Harold A. Clark, and each of them, are hereby restrained and enjoined from printing, publishing, circulating, distributing, selling or offering for sale said book or pamphlet entitled "A Practical Aid for Executors or Administrators of Decedents' Estates' 'or any publication of like character.

2. Defendants, and each of them, are restrained and enjoined from holding themselves out to the public generally as qualified to give advice in the preparation of wills or in the handling of decedents' estates.

3. Defendants, and each of them, are enjoined and restrained from practicing law in any form, either directly or indirectly, or inducing the public to believe that they or either of them have the right to practice law.

4. Preliminary injunction heretofore granted is continued until final hearing or further order of the court.

FARRELL, J., May 10, 1940.—The decree nisi restrained defendants: (1) From publishing and distributing the pamphlet entitled "A Practical Aid for Executors and Administrators of Decedents' Estates"; (2) from holding themselves out to the public as qualified to give advice in the preparation of wills, etc.; (3) from practicing

law in any form or inducing the public to believe that they have the right to practice law.

Upon the argument of exceptions before the court in banc, it was earnestly and strenuously contended that the enjoining of the publication and circulation of the pamphlet was an invasion of defendants' constitutional right of freedom of speech and freedom of the press.

While the court is not inclined to agree with this contention for the reason that the pamphlet was published as a part of a plan of defendants, and especially Yetter, holding themselves out as qualified legal advisers and ready for consultation with clients concerning wills and decedents' estates, and because the pamphlet contained questions and answers which involve legal knowledge and training; nevertheless, the court is willing to modify the injunction so as to permit defendants to print, publish, and circulate their pamphlet provided they expunge the questions and answers contained in their book requiring expert legal knowledge and provided, in good faith, they do not hold themselves out for consultation and ready to give legal advice and assistance.

Accordingly, the injunction heretofore granted is modified as follows:

### Final decree

Now, May 10, 1940, this cause came on to be heard on bill, answer, and exceptions to decree nisi; and upon consideration thereof it is ordered, adjudged, and decreed:

1. That defendants, Stanley M. Yetter and Harold A. Clark, and each of them, are hereby restrained and enjoined from printing and publishing questions and answers involving expert or professional legal knowledge in their pamphlet entitled "A Practical Aid for Executors or Administrators of Decedents' Estates", or in any other pamphlet or publication which they may print, publish, circulate, or distribute; and from holding themselves, or either of them, out to the public in any such pamphlet or publication as open or ready for consultation for legal

services or advice. With these restrictions they are permitted to print and circulate such pamphlet or publication.

2. Defendants, and each of them, are restrained and enjoined from holding themselves out to the public generally in any way or by any means whatsoever as qualified and willing to give legal advice in the preparation of wills or in the handling of decedents' estates.

3. Defendants, and each of them, are enjoined and restrained from practicing law in any form, either directly or indirectly, or inducing the public to believe that they or either of them are qualified or have the right to practice law.