## SUPREME COURT — APPELLATE DIVISION — SECOND DEPARTMENT.

February 28, 1919.

## THE PEOPLE v. HENRY ALFANI.

(186 App. Div. 468.)

ATTORNEYS—PRACTICE AT LAW IN VIOLATION OF SECTION 270 OF PENAL LAW —NOTARY DOES NOT VIOLATE STATUTE BY DRAWING CONVEYANCES, BILLS OF SALE, ETC.

A notary public cannot be punished under section 280 of the Penal Law for taking pay for drawing up ordinary conveyances, mortgages, bills of sale and even wills at charges similar in amount to those customarily charged by notaries.

Said statute refers primarily to appearing in courts of record and to such appearances in courts not of record in New York city.

JAYCOX, J., dissented.

APPEAL by the defendant, Henry Alfani, from a judgment of the Court of Special Sessions of the City of New York, Part II, rendered against him on the 3d day of May, 1918, convicting him of practising or appearing as an attorney at law, without being admitted or registered, in violation of section 270 of the Penal Law.

Sentence, however, was suspended.

The information charged as follows:

" The defendant, on December 27, 1917, and for a long time prior thereto, in the county of Kings, held himself out to the public as being entitled to practice law and assumed to be an attorney and counselor at law and assumed, used and advertised the title of lawyer and attorney and counselor at law, and attorney at law and counselor at law and attorney and counselor * * * in such a manner as to convey the impression that he is a legal practitioner of law, and advertised that he owned,

conducted and maintained a law office, and office for the prac-
tice of law, without being first duly and regularly admitted and
licensed to practice law in the courts of record of this State,.
and without having taken the constitutional oath, and without
having subscribed and taken the oath or affirmation required
by section four hundred and sixty-eight of the Judiciary Law,
and filed the same in the office of the Clerk of the Court of
Appeals, as required by said section." The testimony of one
Gallo, an investigator of the State Industrial Commission,
showed that a sign on defendant's office at 475 Park avenue had
the words: "Redaction of all Legal Papers." The photo-
graph of the entire sign described appellant as an insurance
agent, real estate operator, and notary public.

Mr. Gallo, who gave the name of Lecas, personated an owner
of a soda water stand. The other detective, one Geannelis,
passed for the buyer of such stand. They called at defendant's
office on December 27, 1917. Gallo proceeded to give Alfani
details, from which Alfani drew a bill of sale, with a chattel
mortgage back. Geannelis likewise signed and verified an affi-
davit that there were no liens on the articles mortgaged. Gallo
paid for drawing these papers four dollars. Some conflict of
testimony appears about a mention of future difficulties. Gallo
said he had asked appellant whether in case of trouble he could
come back for legal advice, and that Alfani said, "Yes."
Alfani's version was that Gallo said, "'Suppose this man will
not pay me; what should I do?' 'Well,' I said, 'then you
go to the marshal or you go to a lawyer and then he will tell
you what to do.'" Alfani proved that since 1888 he had been
a notary public; that he lived in the house over his office, which
was in the basement. He admitted drawing the papers. His
sign or cards never had the word "lawyer." He said the word
"redaction" (no doubt as used on his sign) signified the draw-
ing of legal papers.

*Peter P. Smith,* for the appellant.

*Harry G. Anderson, Assistant District Attorney (Harry E. Lewis, District Attorney,* with him on the brief), for the respondent.

PUTNAM, J.:

The office of notary seems as old as Roman notes of legal proceedings. Notaries were early employed in drawing up deeds, contracts and other documents. (Brooke " The Office and Practice of a Notary in England," p. 3.) A notary public in England may prepare deeds, agreements, wills and codicils, relating to real and personal property in England, also deeds and other documents to take effect in British dominions beyond the seas and in foreign countries, to conform to the law of the place where such deed is to operate; also to verify, authenticate and attest by his official seal the execution of deeds or other documents, contracts and powers of attorney; to prepare charter parties, bottomry bonds and average agreements and other mercantile documents. (Halsbury's Laws of England, Vol. 21, § 817; King v. Scriveners' Co., 10 B. & C. 511, 519.) On the Continent a notary public may not only prepare mercantile papers, but also contracts and conveyances. His notarial copies prove themselves in contested proceedings. (Goirand French Commercial Law, 9, 10, 19; Todd Belgian Law with Codes of Commerce & Procedure, 11.) A notarial will is where the testator's intentions are written down by the notary, and then signed by the testator in the presence of the notary and witnesses. (French Civil Code, arts. 971-974.) In the State of New York his powers are not defined. Besides his duties as to commercial paper is a general reference to his recognized international powers. The statute gives authority " to exercise such powers and duties as by the law of nations and according to commercial usage, or by the laws of any other government,

State or country, may be performed by notaries." (Executive Law [Consol. Laws, ch. 18; Laws of 1909, ch. 23], § 105, subd. 1, as amd. by Laws of 1911, ch. 668.)

The general provisions of the Penal Law cannot be fairly construed to punish a notary public for preparing an instrument like a bill of sale, will or mortgage. Prior causes in this department have had to do with corporations engaging in legal affairs and amenable to Penal Law, § 280. Here the defending notary has been drawing up for pay ordinary conveyances, mortgages, bills of sale, and even wills, for charges similar in amount to those customary by notaries.

Section 270 of the Penal Law comes from older statutes that are intended to protect the bar. It refers primarily to appearing in courts of record, and to such appearance in courts not of record in New York City. Practising in Justice's Court (outside of the City of New York) is not thereby forbidden.

The statute prohibits: 1. Making a business to solicit employment for a lawyer. 2. Making a business to furnish attorneys or counsel to render legal services. 3. Holding one's self out to the public as being entitled to practice law, *as aforesaid*. 4. In any manner to assume to be an attorney or counselor at law, or equivalent terms in any language, to convey the impression that he is a legal practitioner. 5. Advertising that he conducts a law office, or office of any kind for the practice of law.

The enumerated expressions used are subject to the rule of *ejusdem generis,* and relate to practices connected with court or legal proceedings. Alfani's acts are those of a notary public, or a conveyancer.

The office of commissioner of deeds in New York City is not conferred on applicants without the special qualification shown by a legal clerkship, or other affidavit or certificate of competency. (Greater N. Y. Charter [Laws of 1901, ch. 466], § 58, as amd. by Laws of 1917, ch. 610.) If the public need protection against unprofessional conveyancers or notaries, the

Legislature can readily set up a standard of like qualifications for notaries. Here is the real direction for a reform, rather than along the line that such notaries when drawing papers are engaged in the " practice of law."

I recommend to reverse this conviction, and to discharge the defendant.

JENKS, P. J., MILLS and KELLY, JJ., concurred; JAYCOX, J., dissented.

Judgment of conviction of the Court of Special Sessions reversed, and defendant discharged.