A contract made by a person conducting an agency for the collection of accounts is illegal and void under the provisions of section 270, Penal Law, where it appears that such person is not an attorney and that the contract provides for the institution of an action, if necessary, for the collection of the account. Buxton v. Lietz, 136 N. Y. S. 829; affd. 139 N. Y. S. 46.

A judgment entered in the Municipal Court of New York City, on the motion of a person not admitted to practice as an attorney in the state, is void, and may be impeached in collateral proceedings by anyone with whose rights or interests it may conflict. Proof of this defect, however, is inadmissible where the party attacking the judgment alleges that it is defective on other specific grounds only. °Penna v. McGonigle, 73 Misc. 35.

Under this section a lawyer coming from another state, or holding a degree of a law school in another state, cannot hold himself out or advertise in such a manner as to convey the impression that he is legally entitled to practice such profession, unless duly and legally licensed and admitted to practice in this state under our laws, without being guilty of a misdemeanor. People v. Somme, 120 App. Div. 20, 21 N. Y. Crim. 26; affd. 190 N. Y. 541.

A layman who agrees with property owners to use every lawful means to secure a reduction of the assessed valuation of their properties, and when necessary to employ attorneys and experts at his own expense, in consideration of receiving an amount equal to one-half of the reduction, is guilty of a violation of this section, as performing legal services without being admitted as an attorney. People v. Purdy, 162 N. Y. S. 65.

---

## COURT OF APPEALS.

### December 9, 1919.

## THE PEOPLE v. TITLE GUARANTEE AND TRUST COMPANY.

### (227 N. Y. 366.)

(1) PRACTICE OF LAW BY CORPORATIONS—PENAL LAW, § 280.

A corporation which, on a single occasion, without giving any advice leading to and consummated therein, prepares a bill of sale and chattel mortgage by filling out blanks upon and in accordance with the specific direction of a purported customer, is not rendering legal services or holding itself out as entitled to practice law.

(2) Same—When drawing of bill of sale and chattel mortgage by title guarantee and trust company not a violation of the statute.

Defendant printed and kept for distribution a booklet of which the cover and each page were entitled, ''Fees for the Examination of Titles.'' There was contained in it the statement, ''In all counties, fees for drawing and recording papers and fees for surveys are in addition to the regular charges. Survey charges are found on pages 17-28 and charges for drawing and recording papers on pages 29 and 30.'' On page 29, which had the additional heading, ''Average Charges . for Drawing Papers,'' was found the item, ''Bill of Sale (Brooklyn & Queens) $3.00.'' Two detectives visited the appellant's place of business. They explained to one of appellant's employees that one of them was selling a store to the other for a given sum and that he desired a bill of sale and chattel mortgage to be drawn. He gave to the employee in response to his request therefor a list of the merchandise which it was claimed was involved. This employee then passed the detectives to another employee, who took and filled out in pencil blank forms of a chattel mortgage and bill of sale, which do not appear to have been prepared by the appellant, and gave them to a stenographer to be finally filled out. This stenographer returned them to the last employee, who looked them over, placed a seal on them, inquired the rate of interest and stated that the date of execution which was left blank could be filled in when the papers were executed. For thus preparing these papers fees were charged and paid. The corporation has been convicted of a violation of section 280 of the Penal Law prohibiting the practice of law and rendition of legal services by a corporation. *Held,* that the given acts did not constitute practice of law or rendition of legal services and were not such acts as had been committed to the exclusive charge of attorneys, but were those which might be performed by a layman at the time these acts were committed without being subject to criminal punishment. *Held, further,* that in the light of all of the evidence derived from this booklet the price advertised for drawing bills of sale is to be regarded as applicable to those which might be lawfully prepared as an incident to its regular business, and is not to be regarded as an advertisement holding out the appellant as soliciting and engaging in the business of drawing bills of sale in such manner as would amount to the practice of law. (People v. Alfani, 227 N. Y. 334, distinguished.)

People v. Title Guarantee & Trust Co., 180 App. Div. 648, 37 N. Y. Crim. 102, reversed.

Appeal from a judgment of the Appellate Division of the Supreme Court in the Second Judicial Department, entered December 14, 1917, which affirmed a judgment of the Court of Special Sessions of the city of New York convicting the

defendant of a violation of section 280 of the Penal Law by practicing law without a license.

The facts, so far as material, are stated in the opinion.

*Charles E. Hughes, Isidor J. Kresel, Harland B. Tibbets* and *James P. Judge,* for appellant.    The filling out and delivery of blank forms of bill of sale and chattel mortgage in the circumstances of this case did not constitute practicing law within the prohibition of section 280 of the Penal Law. (Matter of Persy, 36 N. Y. 653; Tiger v. Western Investment Co., 221 U. S. 286; Matter of Co-operative Law Co., 198 N. Y. 479; Matter of City of New York, 144 App. Div. 107, 204 N. Y. 625; U. S. Title Guaranty Co. v. Brown, 86 Misc. Rep. 287, 166 App. Div. 688, 217 N. Y. 628; People ex rel. Trojan Realty Corp. v. Purdy, 174 App. Div. 702; People ex rel. Floersheimer v. Purdy, 221 N. Y. 481; Matter of Bensel, 68 Misc. Rep. 70; Meisel & Co. v. National Jewelers' Board of Trade, 90 Misc. Rep. 19; Matter of Associated Lawyers Co., 134 App. Div. 350.)    The defendant cannot be held criminally responsible for acts of its employees which were not only unauthorized but were contrary to express instructions.    (New York Central Railroad v. U. S., 212 U. S. 481; People v. Sheffield Farms, 149 App. Div. 923, 206 N. Y. 79; People v. New York Centadrink Co., 152 App. Div. 912, 207 N. Y. 736.)

*Harry E. Lewis, District Attorney (Ralph E. Hemstreet* and *Harry G. Anderson* of counsel), for respondent.    The acts defined in the information, and with the commission of which the appellant was charged, constitute practicing law within the meaning of section 280 of the Penal Law, and the exceptions specified in that section do not apply.    (Morgan v. Van Ingen, 2 Johns. 204; Cornell Bank v. Varnum, 49 N. Y. 269; People v. People's Trust Co., 180 App. Div. 494; People v. Taylor, 56 Colo. 441; People v. Schreiber, 250 Ill. 345, 22

Am. & Eng. Encyc. of Law [2d Ed.], 785; State v. Paul, 56 Neb. 369; Bibber v. Simpson, 59 Me. 181; State v. Heffernan, 28 R. I. 20; State v. Wilhite, 132 Iowa, 226; People v. Mulford, 140 App. Div. 716, 202 N. Y. 624; People v. Phippin, 70 Mich. 6.)    Although the appellant is a corporation organized for the purpose of examining and guaranteeing titles to real property, it does not come within any of the exceptions in the statute.    The acts complained of by the prosecution cannot be performed by it.    (Matter of Co-operative Law Co., 198 N. Y. 479; U. S. Title Guaranty & Trust Co. v. Brown, 86 Misc. Rep. 287; Gaulie v. Solicitors' L. & T. Co., 9 Pa. Co. Ct. 634.)    The acts charged in the information are not necessarily incident to the appellant's charter powers.    (Matter of Co-operative Law Co., 198 N. Y. 479; Ehmer v. Title Guarantee & Trust Co., 156 N. Y. 10; Trenton Co. v. Title Guarantee & Trust Co., 50 App. Div. 490; People ex rel. Third Ave. R. R. Co. v. Newton, 112 N. Y. 396; Mayor v. Manhattan Ry. Co., 143 N. Y. 1.)

Hiscock, Ch. J.:

The appellant, originally incorporated under another name, was authorized " to guarantee bonds and mortgages and titles to real estate; " and " to make and cause to be made and to purchase and to pay for all such searches, abstracts, indices, maps and copies of records as the trustees thereof may deem necessary," and for a long time has been engaged in the prosecution of this business.

It has been convicted of a violation of section 280 of the Penal Law prohibiting the practice of law and rendition of legal services by a corporation and of which section the presently material provisions read as follows: " It shall be unlawful for any corporation    *    *    *    to hold itself out to the public as being entitled to practice law, or to render or furnish legal services or advice, or to furnish attorneys or counsel or to render legal services of any kind in actions or proceedings of

any nature or in any other way or manner, or in any other manner to assume to be entitled to practice law, * * *. This section shall not apply to any corporation * * * lawfully engaged in the examination and insuring of titles to real property, * * * (and as amended in 1916). But no corporation shall be permitted to render any services which cannot lawfully be rendered by a person not admitted to practice law in this state."

The evidence upon which if at all the conviction of appellant must rest is in substance as follows:

Appellant printed and kept for distribution a booklet of which the cover and each page were entitled " Fees for the Examination of Titles." There was contained in it the statement, " In all counties, fees for drawing and recording papers and fees for surveys are in addition to the regular charges. Survey charges are found on pages 17–28 and charges for drawing and recording papers on pages 29 and 30." On page 29, which had the additional heading, " Average Charges for Drawing Papers," was found the item, " Bill of Sale (Brooklyn & Queens) $3.00."

On the occasion of the commission of its alleged offense two detectives employed for that purpose visited the appellant's place of business in Brooklyn. Following directions given in answer to their inquiries they came to one of appellant's employees, to whom one of the detectives explained that he was selling a store to the other for a given sum, of which part was to be paid in cash, and that he desired a bill of sale and chattel mortgage to be drawn. He gave to appellant's employee, in response to his request therefor, a list of the merchandise which it was claimed was involved. This employee then passed the detectives to another employee, who took and filled out in pencil blank forms of a chattel mortgage and bill of sale, which do not appear to have been prepared by the appellant, and gave them to a stenographer to be finally filled out. This stenographer returned them to the last employee, who looked them over, placed a seal on them, inquired the rate

of interest and stated that the date of execution, which was left blank, could be filled in when the papers were executed. For thus preparing these papers fees were charged and paid.

There was evidence that on some subsequent occasion some employee of appellant prepared some other instrument of the same general kind as those involved in this proceeding.

In the consideration of the substantial and final question presented to us we can readily eliminate certain provisions of the statute and certain questions of evidence which have been a subject of discussion. Manifestly the provision in the statute that it " shall not apply to any corporation  *  *  * lawfully engaged in the examination and insuring of titles to real property " is not to be taken literally. So far as concerns this case, small controversy if any arises in respect of its meaning. On the one side it is not seriously denied that it would permit appellant, or save to it the right, to do the acts which are involved here if they were an incident to its business and were necessary to place in insurable condition a title which was submitted to it for guaranty. On the other hand, it is not argued that it would enable appellant to prepare the instruments which on this occasion it did prepare if they were not thus incidental to and connected with the conduct of its authorized business, and were otherwise prohibited.

Under this interpretation of its powers we think that the evidence furnished by the booklet referred to is ineffective to sustain the present conviction. We think that in the light of all of the evidence derived from this booklet the price advertised for drawing bills of sale is to be regarded as applicable to those which might be lawfully prepared as an incident to its regular business and is not to be regarded as an advertisement holding out the appellant as soliciting and engaged in the business of drawing bills of sale in such manner as would amount to the practice of law. Also, in the view which we take, the evidence that subsequently a similar instrument was prepared by appellant's employees is of no importance. We

do not think that there is a word of evidence which fairly sustains the contention of the prosecution that appellant's employees were asked to or did give legal advice leading to or in respect of the instruments which were prepared.

So, stripped of inconclusive features and freed from unsupported claims of evidence, and eliminating any consideration of the principle of *ultra vires,* the bare and decisive inquiry becomes whether a corporation which, without giving any advice leading to and consummated therein, prepares a bill of sale and chattel mortgage by filling out blanks upon and in accordance with the specific direction of a purported customer is rendering legal services or holding itself out as entitled to practice law.    Under the circumstances of this case the general inquiry really is reduced to the narrow one whether this amounted to rendering legal services, for, as we have pointed out, there is no evidence that the appellant held itself out as entitled to practice law unless it did so by performing legal services whereby law would be practiced.    I think that a negative answer must be given to this inquiry.

In approaching the decision of the question and at the outset we ought to consider what must have been the purpose of the Legislature in enacting the statute.    That purpose seems obvious.    There are certain fundamental requirements and features which, according to our conception in this state, attend and surround the practice of law and rendition of truly legal services.    These are the possession of sufficient knowledge and skill, the existence of a relationship of trust and confidence upon which the client may securely rely, and the power of courts to use summary proceeding if necessary to enforce on the part of the attorney observance of the obligations and duties growing out of this relationship.    A corporation could not adequately comply with and subject itself to these requirements if there were no penal statute.    Through the employment of attorneys as its agents it might fairly meet the requirements of knowledge, skill and ordinary legal responsibility, but it could

not establish a relationship of confidence and be subject to summary control as an individual attorney can. (Matter of Co-operative Law Co., 198 N. Y. 479.) Therefore, the statute undertakes by its prohibitive provisions to forbid a corporation to attempt or pretend to do what it cannot satisfactorily or fully do, by holding itself out as an attorney and by professing to perform services of such a nature that their performance ought to be safeguarded by those principles and methods which can be applied to an individual and cannot be applied to a corporation. This purpose to prevent a corporation from simulating the character of an attorney and from essaying to render such services is clearly indicated by the language of the statute. The corporation is forbidden to practice or appear " as an attorney at law " or to make it a business to practice " as an attorney at law " or " to assume to be entitled to practice law " or " to assume, use or advertise the title of lawyer or attorney, or attorney at law, or equivalent terms in any language in such manner as to convey the impression that it is entitled to practice law."

On the other hand, no convincing reason is suggested why a corporation should be punished for performing an act which because of simplicity and lack of confidential character it has not been thought necessary to confide to the exclusive care of attorneys, but which may be performed by a layman. Not only common sense, but the wording of the statute itself, dictates this view. This appears in that amendment to the statute which, after provisions that the section should not apply to corporations in certain cases, reads: " But no corporation shall be permitted to render any services which cannot lawfully be rendered by a person not admitted to practice law in this state." This sentence characterizes the purpose of the entire statute and outlines the final test. Various direct and specific prohibitions and exceptions conducive of special exceptions like that applicable to appellant have been enacted, but in the end we come to the controlling declaration that whatever else

may or may not have been said, a corporation shall not be permitted to do anything in the way of practicing law or rendering legal services which could not be performed by a layman.    That sums up the final legislative thought and suggests the standard by which, if there be inadvertence or doubt elsewhere, the character of a given act may be measured.

Thus, in the light of this apparent purpose of the statute, and in the absence of specific definitions, it seems that the best and controlling test by which to determine whether the given acts constituted practice of law or rendition of legal services is by the answer to be given to the underlying inquiry whether such acts were ones which had been committed to the exclusive charge of attorneys or were those which might be performed by a layman.    In this inquiry I do not regard it as decisive that an act is one which is commonly performed by an attorney. That might be a matter of habit or convenience.    The inquiry is rather whether it is one which might lawfully be performed by a layman.    This is to be decided by the nature of the act and not by the identity of the individual who most frequently performs it.    That in effect has been determined many times when the courts have refused to lay their hands summarily upon an attorney for the purpose of correcting transgressions in a transaction which was not undertaken by him in his character of attorney.

The appellant has argued with much vigor and learning the proposition that notaries public and scriveners in foreign countries, especially England, without being admitted to the bar, from time immemorial have been permitted to do conveyancing, and from these historical facts draws the conclusion that by analogy notaries public and laymen are entitled to draw conveyances in this state.    The history of notaries and scriveners does somewhat support this view.    While these men were compelled to prepare for their avocation and their admission and practices were subject to rules and regulations they nevertheless were not fully admitted members of the legal pro-

fession, and therefrom flows the inference that while it was thought necessary that they should have preparation, it was not regarded as necessary that they should be fully and completely members of the legal profession in order to render these services.

But I think there is a stronger argument in favor of the contention that a layman at the time of these occurrences was permitted to draw such simple instruments as those here involved were without being subject to criminal punishment.

We may take judicial notice of a widespread custom which has prevailed from time out of memory in this state, and doing so we know that laymen have been accustomed to draw such instruments, not merely as a matter of accommodation for friends and neighbors, but for pay. It probably would not be too much to say that in many rural communities more were drawn by laymen than by attorneys, and of course if it was lawful for a layman to draw such an instrument in such a community it was also lawful in a more urban one. While the Legislature might differentiate those conditions, we could not. Moreover, such practice has not been confined to such communities. We know that in cities constantly men engaged in the real estate business and banks have prepared for their customers such instruments without doubt or criticism.

The Legislature, when it enacted not only section 280 of the Penal Law, which we have been considering, but also section 270, relating to the practice of law by an individual without being admitted and registered, was charged with the same knowledge of prevailing customs and practices with which we are chargeable. Its members knew, oftentimes doubtless by practical and personal observation and experience, that laymen throughout the state were rendering such services as are here involved. Not only by practice and custom but by inherent privilege they had the right to do this unless forbidden by statute, and if the Legislature intended to prohibit a widespread practice and establish a new rule it was its duty to say so

clearly and unmistakably in the statute relating to the practice
of law and rendition of legal services by individuals.    It did
not say so, and in my opinion there is not to be found in that
section of the Penal Law any provision against the rendition
of such services by an individual.    We think the same idea
is emphasized as in section 280, that an individual who is not
admitted to practice must not assume the character of an
attorney at law.    He is forbidden to practice or appear " as an
attorney at law or as an attorney and counselor at law," or to
make it a business to practice " as an attorney at law or an
attorney and counselor at law," or to hold himself out to the
public as being entitled " to practice law as aforesaid or in
any other manner " or " to assume to be an attorney or coun-
selor at law."    But there is nothing which can fairly be
regarded as indicating an intention to abolish an existing and
widespread practice and to prevent a layman as such and with-
out any simulation of or pretense to the character of an attorney
from drawing a simple instrument as instructed by his customer
and not involving or predicated upon any legal advice then
given.

When subsequently the Legislature, chargeable with knowl-
edge of this practice and of the fact that under the enactment
of section 270 of the Penal Code it was still permissible for
a layman to draw such an instrument, enacted section 280 for
the purpose and in the language and with the qualifications
which we have mentioned, we do not think it would be a fair or
reasonable interpretation to hold that it intended to prevent
a corporation from drawing a simple bill of sale or chattel
mortgage which from a legal standpoint could have been drawn
by any layman in the state.    It was easy to cover and prohibit
such transactions if so intended, and we do not think that we
should strain to discover such intention in the absence of some
language clearly expressing it.

In seeking to reach a proper decision of the question before
us we ought not to ignore considerations of public convenience

and economy as involved in the every day transaction of ordinary business matters.   If provisions of the statute were so clear that their meaning was beyond the range of doubt or debate, of course we could not be influenced by any such consideration.   But they are not.   The very able argument which has been made on each side is sufficient evidence that persuasive reasons might be marshalled in favor of a decision of the question in either way.   Under those circumstances we can consider practical results.   As has been indicated, we can take notice of the widely existing practice of laymen to prepare simple instruments like those before us.   If it is unlawful to fill out the blank form for a chattel mortgage or bill of sale, it would be equally so to prepare various other simple instruments which are now commonly prepared by laymen and banks, and it would be necessary to undergo the trouble and expense of summoning an attorney to perform acts which really do not require his services.   Again, I say, that if the Legislature intended to command this change in the transaction of ordinary business it should have said so clearly.   There can be no debate of the proposition that the standards of the legal profession should be maintained at a very high level.   Everyone who has had experience knows that much more harm comes to the public from the ignorance and carelessness than from the intentional misconduct of those who have succeeded in securing the right to practice law.   But this does not furnish a reason for so broadening the meaning of a statute as to confer upon attorneys the exclusive right to render certain services as incapable of performance by a layman when common and long-established practice points in a different direction and the Legislature has not fairly indicated an intent to change existing conditions.

We appreciate also that it may be difficult to draw a logical and satisfactory dividing line under the statute between such acts as are before us and some other one.   It very well may be that the difference is so marked between the transaction of

preparing a simple chattel mortgage or bill of sale and the preparation and execution of a complicated deed of trust or will that there would be no difficulty in locating these on different sides of the line. It may be much more troublesome to make the location in some other case. It would be worse than futile to attempt to formulate a general and universal rule which would cover all cases. We must take care of the problems of the future when they arise. We at least settle those which are now presented to us.

In conclusion, what I have said is not to be interpreted in any manner as the expression of an opinion upon the question which would arise if a corporation by words or acts should hold itself out as engaged in the business of preparing instruments of the character involved in this proceeding or other ones and should so do. In the case of People v. Alfani, decided herewith, we have held that a layman, by holding himself out as engaged in the preparation of legal instruments and by giving advice in connection with their execution, furnished evidence by which he could be convicted of holding himself out to the public as being entitled to practice law in violation of section 270 of the Penal Law. It is quite possible that a corporation by some such conduct might furnish evidence whereby it could be convicted of a violation of the statute relating to corporations. That question does not seem to me to be presented by the present case, and therefore has not been considered.

For these reasons the judgments should be reversed and the information dismissed.

Pound, J. (concurring):

I agree that the people have failed to make out a case, but I desire to add a few words to make clear the reasons by which I have reached that conclusion.

Much may be said on the historical distinction between lawyers and scriveners and notaries, as has been admirably

done by Putnam, J., in the dissenting opinion (180 App. Div. 654) below and in People v. Alfani (186 App. Div. 468). Doubtless many individuals, unlearned in the law, occasionally draw deeds, wills, mortgages, and other instruments without rendering legal services in the common acceptance of the term, who would be startled to learn that they had criminally engaged in the practice of law. The test of the legislative intent is to be found, however, in the present day evil which the legislation aims to correct. The evil addressed seems to be, both in the case of the individual and the corporation, the practice of rendering, with some continuity, services of the character now generally performed by lawyers as a part of their ordinary routine—not merely trying cases, giving advice or preparing difficult papers, but ordinary conveyancing as well. Arguments based on the ancient rivalry of the attorneys and the scriveners; the unique rights and privileges of the continental notary and the convenient custom of laymen to draw wills and other legal instruments, must give way to a consideration of the well-known work of the modern law office. The legislation is in aid of the lawyers, and for the protection of the public, and is antagonistic to the policy which would permit anyone to act habitually as a scrivener or conveyancer. The question is not one of sound public policy, but is one of legislative policy merely. The lawyer's profession or calling does not cover the preparation of all papers of legal significance, such as promissory notes, for which lawyers are not as a rule resorted to, but it does, I think, cover the preparation of bills of sale and chattel mortgages. I am unable to rest any satisfactory test on the distinction between simple and complex instruments. The most complex are simple to the skilled and the simplest often trouble the inexperienced. Skill is sought when another is employed to do the work. If the blank forms used by the trust companies are prepared or approved by their legal counsel, then, when the clerks fill them out, the corporation tacitly advises the client that the forms are proper and sufficient for

the purpose, and one would expect that he was getting good legal advice, indirectly, if he had papers thus prepared. So the giving of oral advice is not a satisfactory test. If such services as were rendered in this case are customarily rendered, I think that they should be characterized as legal services. This does not imply that a real estate broker may not prepare leases, mortgages and deeds, or that an installment house may not prepare conditional bills of sale, in connection with the business and as a part thereof. The preparation of the legal papers may be ancillary to the daily business of the actor or it may be the business itself. The emphasis may be upon the services of the broker or the business of the trader, or it may be upon the practice of law.

In the case before us I think that the defendant may not make it a business to prepare even simple legal papers for all who apply, independently of its chartered powers. The corporation is not, however, chargeable criminally for the isolated act of its employees, as here charged, which might well occur otherwise than as an incident of a general practice. On the evidence it does not hold itself out as preparing legal instruments generally, but only in connection with its legitimate business.

For these reasons, I concur in the result that the judgment should be reversed and the information dismissed.

CRANE, J. (concurring):

I agree with the chief judge in this case, but desire to express my reasons for so doing. In my judgment the Title Guarantee and Trust Company could draw any papers or legal instruments necessary or incident to its chartered powers; that is, it could draw a chattel mortgage in connection with its closing of a title or the placing of a mortgage. This is not prohibited by section 280 of the Penal Law. The little pamphlet or circular showing a list of prices for drawing papers must be taken at its face value in the absence of other evidence and

considered to be the charges made for drawing such instruments when necessary or incident to the real estate transactions conducted by the company.   It then remains to be determined whether the single act of drawing a chattel mortgage not connected with any other work by the company is an offense.

In the first place, the company disavows any intention or attempt to conduct a business of drawing papers, whether legal instruments or otherwise, disassociated from its regular and ordinary business.

Section 280 of the Penal Law makes it unlawful for any corporation to do the following:

1. To practice as an attorney at law in any court.

2. To make it a business to practice as an attorney at law in any court.

3. To hold itself out to practice law or to render legal services.

4. To furnish attorneys.

5. To render legal services in any way or manner.

6. In any other manner to assume to be entitled to practice law.

The aim of this section is at a practice or a business to do the prohibited act.   The single occurrence is not the evil sought to be prohibited.   The words " to render legal services of any kind in any way or manner " must be read in connection with the whole provision and have reference to a practice or a business of rendering legal services in any manner. Should the defendant advertise or conduct a business of drawing chattel mortgages or legal papers unconnected with its other authorized work it would be violating this law and be guilty of a misdemeanor.

CARDOZO, J., dissents upon the ground that accepting, as he does, the conception of legal services embodied in Judge POUND's opinion, he believes that there was evidence before the triers of the facts sufficient to sustain the finding of a vio-

lation of the statute.    ANDREWS, J., and POUND and CRANE, JJ., in separate memoranda, concur with HISCOCK, Ch. J.; CHASE, COLLIN, and CARDOZO, JJ., dissent in memorandum by CARDOZO, J..

Judgments reversed, etc.

## NOTE ON PRACTICE OF LAW BY ASSOCIATIONS — PENAL LAW, § 280.

It is settled that a corporation cannot practice law either directly or indirectly by employing lawyers to practice for it. Matter of Co-operative Law Co., 198 N. Y. 479.

A corporation organized for the purpose of practicing law does not come within the exception of this section as being a "corporation lawfully engaged in a business authorized by the provisions of any existing statute," and, hence, its organization cannot be lawfully approved by the Appellate Division. Matter of Co-operative Law, 198 N. Y. 479. Motion for leave to appeal to the Court of Appeals granted, 136 App. Div. 918.

This section is not void as abridging the privileges or immunities of citizens of the United States because it seeks to prevent a corporation from practicing law in the federal courts in this state. "To hold that this constitutes an abridgment of privileges or immunities of citizens of the United States, or that it deprives persons of property without the due process of law, would seem to be absurd. There is no federal statute permitting corporations to practice law in the federal courts, and none is likely to be passed in the fact of the numerous decisions of the courts holding that for a corporation to engage in the practice of law is *malum in se* and contrary to public policy. It might as well be contended that, if there were no federal statutes punishing perjury committed in the federal courts, the perjury law of the state would be void in so far as it applied to perjury committed before a referee in bankruptcy sitting outside a federal building, but within the state. When the time comes that a Congress or the judicial power of the United States authorizes corporations to practice law in the federal courts, it will be time enough to consider this grave constitutional question. In the meantime it will be assumed that the Legislature of the state, which creates corporations, has retained the power to prohibit its own creatures from doing acts that are deemed by the Legislature to be inimical to the public interest, contrary to public polcy, and that statutes to this end will be enforced by the courts of this state." Meisel v. National Jewelers Board of Trade, 80 Misc. 19.