## UNAUTHORIZED PRACTICE IN FRANKLIN CO, In Re

Ohio Common Pleas, Franklin Co

Decided Nov 16, 1936

James I. Boulger, Columbus, for Ivan Gore. .

W. B. McLeskey, Chairman, Columbus, Thomas H. Clark, Columbus, Samuel G. Osborne, Columbus, John Carlisle, Columbus, John Matthews, Columbus, Arthur L. Rowe, Columbus, Howard Dresbach, Columbus, I. W. Garek, Columbus, and Jacob H. Wirick, Columbus, The Unauthorized Practice Committee.

## OPINION

By KING, J.

The action herein was brought by the committee, heretofore appointed by the court in the matter of the unauthorized practice of law. The committee seeks to enjoin Ivan H. Gore from engaging in the practice of law.

The complaint lodged by the committee in substance alleges that Ivan H. Gore is not an attorney at law and has not been admitted to the practice of the law in the state of Ohio, and does not have the necessary qualifications to practice under the laws of Ohio and the regulations of the Supreme Court of Ohio. That notwithstanding this fact the said Ivan Gore has for many years last past engaged in the practice of law and will continue the practice in the following particulars:

"In preparing and drawing deeds, mortgages, notes, contracts, powers of attorney, leases, and other legal documents for others."

The complaint further states that such practice by Ivan H. Gore is a fraud upon the public and an infringement on the right of the committee and other attorneys admitted to the practice of law and is a contempt of this court. That the committee is without an adequate remedy at law and unless the said Ivan H. Gore is restrained and enjoined from such practice the committee and others similarly situated and the public will suffer irreparable harm. Wherefore the committee prays for an order restraining and enjoining Ivan H. Gore from engaging in the practice of law and for a further order to show cause why he should not be punished for contempt.

To the complaint Ivan H. Gore has filed his answer wherein he admits he is not an attorney at law admitted to practice under the statutes of Ohio and Rules of the Supreme Court, but denies that he has at any time in the past or expects in the future to engage in the practice of law. In his answer he further specifically denies that he has ever done anything that is fraud upon the public or an infringement upon the rights of the committee or any other practicing attorneys. He further denies that he has executed or drafted any document for the public generally or except as ancillary to and as a part of his regular business as a licensed real estate broker. He further denies any misconduct

constituting a contempt of court or violation of the statutes of Ohio and denies that the complainants are without an adequate remedy at law or will suffer irreparable injury unless he is restrained. Wherefore he prays that the motion be dismissed and that he be discharged and exonerated from any charge of contempt.

Upon the hearing of the cause, evidence was adduced relating to the issue made by the complaint and the answer made thereto.

Able counsel for the respective parties have furnished the court with comprehensive briefs reflecting both skill and industry. The court has carefully considered the record, the briefs submitted by respective counsel and the analysis of the authorities discussed in the briefs. In the last analysis the question for determination is whether the respondent acting as a real estate broker has authority while acting in such capacity to prepare, and draw deeds, mortgages, leases and such contracts which are integral parts of the transaction in which he is then engaged as broker.

It is contended by counsel for complainants that the execution, drafting and drawing of deeds, mortgages, leases and contracts demand and require the exercise of legal skill and knowledge and such acts therefore under the law must be performed by a duly licensed and authorized attorney except when acting merely as a copyist or scrivener, or when the person so drawing said instrument has a direct and primary interest therein or is drawing them for himself.

Counsel for Mr. Gore in the main contend that Mr. Gore was not engaging in the practice of law, as he merely filled out simple blank forms in simple instruments, as ancillary to his real estate business and as a part of it, the preparation of these forms being in no sense the business in which he was engaging, and for the further reason that he made no attempt to conduct the business of drawing these papers disassociated from his regular and ordinary real estate business, and charged no compensation for his services in making such drafts.

The admissions and undisputed facts disclose that the respondent Gore is not an attorney admitted to the practice of law. That no direct compensation was paid to him for the preparation of any of the instruments in question which were prepared by him. That he did not hold himself out to the public generally as one who would prepare and execute any of these instruments. The record discloses that the preparation of any of the instruments in question by Gore was limited entirely to transactions in which he was acting for the parties as a broker and in this particular he testified to the effect that during his thirteen years' experience he has selected and drawn for others any and all instruments which he deemed necessary to consummate real estate transactions. These instruments according to the record include deeds, preliminary contracts, mortgages, land contracts and leases.

The record does not warrant the conclusion or even an inference that Gore in the preparation of the deeds, mortgages and so forth, relating to the transaction in which he was acting as broker, in, and so doing was merely filling in blanks as a copyist or scrivener, but on the contrary was in each instance, as disclosed by the testimony, selecting the form of the instrument and determining its suitability and adaptability to the requirements of the transaction in which he was acting as broker.

The drawing and proper execution of a deed and similar instrument is in no instance with or without forms so simple as to render unnecessary a knowledge of the law and its application to the rights and liabilities of the parties affected by such instrument. Many laymen, including real estate brokers and notaries public have for many years in the past drawn and prepared various and sundry instruments, particularly deeds, wills, contracts and other legal documents. This practice by such laymen has become enlarged by reason of the fact that in modern times printing houses have made it possible to secure for nominal sums forms for such purposes. Because of this fact such laymen have deemed it a perfunctory matter to complete such instruments.

The fallacy of such a presumption as applied to the filling in of blank deeds, mortgages and so forth is apparent from an analysis of the legal requirements of such instruments.

Take for instance a warranty deed form and you will find that the grantor's and the grantee's names are omitted. No consideration is stated, the description of the premises to be conveyed is entirely lacking, the question affecting the encumbrances is left undetermined as is likewise the covenant to warrant and defend. The clause with reference to the release of dower is incomplete, as is appropriate language in the acknowledgment. In order to complete

such instrument one must determine who the grantor should be, what the consideration shall be, and whether the same is a good and valuable one, or a sufficient and adequate consideration. What description shall be used in the deed? Who shall determine the adequacy of the description? Shall the premises be described by metes and bounds; shall it contain a mere lot number description; where shall this description be obtained from? The habendum clause is indeed important; who shall determine whether this clause is correct? Shall there be any reservations in the deed? If so, who shall determine what they should be and how they should be worded? What exceptions shall be made in the covenant of warranty? Who shall determine whether or not the parties intended that the grantee assur.ie and agree to pay a mortgage or take the property subject to a mortgage and what language should be used to put this into effect? In the case of a forfeiture clause, what language shall be employed?

Shall there be an agreement to assume the taxes or other liens? Shall the covenants in question be made to run with the land or shall they simply be personal covenants and how shall such covenants be expressed? Who must determine whether a release of dower is necessary? Who is the proper party to sign and acknowledge a deed and if a deed is given by a corporation who shall determine what officers shall sign and whether or not they are authorized to do so? Who shall determine how many witnesses shall sign? To become effective some instruments must be recorded. Who determines the necessity of recording and when it shall be done?

The books are replete with legal controversies resulting through imperfections in the preparation and execution of deeds, mortgages, contracts, leases and other legal documents.

It seems to us that the filling in of a blank form of deed as above outlined clearly and unmistakably requires the application of legal knowledge pertaining to the subject matter. Hence, for the protection of the public from lack of skill and learning, the drafting of such instruments should be performed by those who have been licensed so to do by reason of their training and qualifications.

While some confusion seemingly has arisen with reference to the mere "filling in of blanks" as it is expressed, there can be no doubt that the selection of the· form to be used and that the determination by the

broker of the suitability and the adaptability of the form to the circumstances of the transaction involves the exercise of legal skill and learning.

Before one is permitted to engage in the practice of law he is required to meet certain educational and moral standards established by the court, and in his practice he is required to comply with ethical standards and rules of conduct promulgated by the court, a violation of which subjects him to disciplinary measures. These educational qualifications and rules of conduct are for the purpose of securing to the courts advocates of ability, learning, and sound character and to protect the public from incompetent and unskilled practitioners.

One who engages in the practice of law may be called upon to act in matters which in many instances affect the deepest and most precious concerns of men, women and children. They may involve the liberty, the property, the happiness, the character and the life of his client. Obviously, one not possessing an adequate degree of intelligence and education can not perform this kind of service, nor should he be permitted to attempt to do so.

The interest of the public should never be lost sight of. It requires legal knowledge on the part of Gore to select the instruments adapted to the transactions in which he was engaged as a broker and in so doing his acts so performed constituted the practice of law and if tolerated by the court would deprive the public of that measure of protection which the law affords through its exactions and requirements of those who are duly licensed to engage in the practice of law.

To characterize the instruments here under consideration as simple instruments, and because of this simplicity may be drawn by anyone, even a high school student, is, in our opinion, a most erroneous conclusion.

Recently there came to the attention of the writer the injury that can result from the failure to employ appropriate words to define a covenant running with the land. It was the intention that such a covenant should be expressed in the instrument, yet the language employed failed to give such an effect. A most serious loss resulted to the party trying to enforce this covenant.

In another case submitted to us, it was intended by the parties to the transaction involved that the property was to be taken subject to the mortgage, rather than that the purchaser should assume it. The contracts and the deed through lack of legal

skill and learning were so imperfectly drawn that a suit for reformation became necessary entailing as it did worry and expense to the parties which could have been avoided through a knowledge of the legal effects of such instruments.

Such instances could be multiplied. These, however, suffice to disclose that these acts are not simple but on the contrary require a knowledge of the law and an application of legal skill.

An act done or performed fixing, determining or affecting the right of another, involves a consideration of law and legal principles and in no instance can be looked upon as a simple matter. The language of Judge Pound in People v Title Guarantee & Trust Co., 227 N. Y. 366, seems apropos:

"I am unable to rest any satisfactory test on the distinction between simple and complex instruments. The most complex are simple to the skilled and the simplest often trouble the inexperienced."

The granting of the privilege to practice law imposes upon the attorney duties and obligations which he is bound by solemn oath to observe. If a client whom he represents sustains a loss due to his failure to observe the fidelity imposed by the relationship of attorney and client, the client may have redress.

In speaking of the lawyer's duty to the public, Judge Rugg in In Re Birgeron, 220 Mass., 472, said:

"Matters about which an attorney might be asked to act involve the utmost trust and confidence. * * * It is a profession whose main purpose is to aid in the doing of justice according to law between the state and individual, and between man and man. Its members are not and ought not to be hired servants of their clients. They are independent officers of the court, owing a duty as well to the public as to private interests. *. * * The right of any person to engage in the practice of law is slight in comparison with the need of protecting the public against the incompetent."

Undivided allegiance to his client always has been required of the attorney. He can not serve two masters. He must never occupy a position subjecting him to conflicting interests nor where his own interests conflict or are apt to conflict with those of his client.

In the case before us the facts show that Gore was representing as broker the purchaser and seller. That in the prosecution of the transaction he selected and determined the legal instrument which he deemed necessary to the consummation of the transactions; which instrument fixed and determined the legal rights, duties and obligations of the parties for whom he was acting, his brokerage compensation depending upon the completion of the transaction.

Clearly his allegiance here under these facts was divided. Certainly there was a conflict of interests. If we correctly interpret the facts he served not only two but three masters.

A situation identical to this was presented to the Circuit Court of Wayne County, Michigan. The court in its opinion said:

"Where one whose brokerage commission depends upon the successful consummation of a deal advises as to the legal documents and prepares the same, the protection of undivided allegiance is of course absent."

The court further said:

"The giving of advice by respondent as to the necessary documents and the preparation of such documents is unquestionably practice of the law by the respondent and a violation of said section (this section does not form a basis for distinguishing this case from the one before us). The fact that respondent acts as a broker does not authorize him to so practice law."

In the case of State ex Wright v Barlow, decided June 19, 1936, the Supreme Court of Nebraska in discussing what acts constitute the practice of law, stated:

"The practice of law includes not only the trial of causes in court and the preparation of pleadings to be filed in court, but also includes drawing and advising as to the legal effect of petitions for the probate of wills, the drawing of wills, deeds, mortgages, and other instruments of like character, where a legal knowledge is required and where counsel and advice are given with respect to the validity and legal effect of such instruments."

The following cases, in substance, set forth the same rule: In re Opinions of the Justices, 194 NE, 313; Paul v Stanley, 168 Wash. 371; Boykin v Hopkins, 174 Ga., 511; Land Title Abstract & Trust Company v Dworken, 129 Oh St, 23, 1 O.O., 313.

In our opinion the issue presented here by the record is determined by the decision of our own Supreme Court in the case of

The Land Title Abstract & Trust Co. v Dworken, 129 Oh St, 23, 1 O.O., 313. The Supreme Court in that case had before it the question of whether or not certain activities on the part of the Land Title Abstract & Trust Co. constituted the unauthorized practice of law. Those activities included the drawing of escrow agreements for others and as an incident thereto any and all instruments such as deeds, mortgages, releases, etc., which might be necessary to close that particular escrow.

The Court of Appeals had enjoined this company and others from "drawing, preparing or advising in reation to the preparation of deeds, mortgages, releases, leases, affidavits, contracts and other documents pertaining to real estate conveyances or transactions for the benefit of others" where such companies had no interest as principal.

The Supreme Court in its opinion at page 34 stated that it was in full accord with the conclusion and order made by the Court of Appeals respecting the drafting of deeds, mortgages, leases and other legal documents.

The Supreme Court in the first paragraph of the syllabus defines the practice of law as follows:

"The practice of law is not limited to the conduct of cases in court. It embraces the preparation of peadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of client before judges and courts and in addition conveyancing, the preparation of legal instruments of all kinds, and in general all advice to clients and all action taken for them in matters connected with the law."

In the fifth paragraph of the syllabus the court says:

"Furnishing opinions in proceedings in court, as to necessary parties thereto, and preparing and advising in relation to conveyances and other papers pertaining to real estate transactions for the benefit of others, are acts falling within the practice of law and may not be performed by guarantee companies except wherein they have a direct or primary interest."

In the first syllabus the court has clearly stated that conveyancing, the preparation of legal instruments of all kinds, all advice to clients, and all action taken for them in matters connected with the law, constitute the practice of law.

It is to be observed in the fifth syllabus

above, that the court specifically states "* * * preparing and advising in relation to conveyances and other papers pertaining to real estate transactions, for the benefit of others, are acts falling within the practice of law. * * *"

The record before us clearly discloses that Gore's acts with relation to the real estate transactions in which he was acting as broker make him amenabe to the law above announced. As hereinbefore stated Gore testified that he had as a real estate broker selected and drawn for others any and all instruments which he deemed necessary to consummate the real estate transactions in which he was engaged as broker. These instruments he testified included deeds, mortgages, and contracts, preliminary contracts and leases.

Such facts bring home squarely within the inhibition of both the first and fifth syllabus unless such acts are within the exception set forth in the fifth paragraph. Clearly he had no direct or primary interest in the transaction in which he was engaged bringing him within the exception. He was directly concerned in effecting the sale or exchange of the property as a broker, he had no interest in the property involved in the transaction. The rights and liabilities created by the legal instrument prepared and executed to effectuate the transaction were of no direct concern to him. His interest was incidental, not primary.

We have reached the conclusion that the acts of the respondent as disclosed by the record in the drawing and execution of preliminary contracts, deeds, mortgages, land contracts and leases constitute the unauthorized practice of law and that an order should be issued restraining the respondent from the performance of such acts.

Let an entry be drawn in accordance with the above findings and conclusions.