Hon. Alexander F. Treadwell Formal Opinion Secretary of State No. 96-F11 Department of State Albany, N Y 12231-0001
Dear Secretary of State Treadwell:
Your counsel has requested an opinion regarding the preparation of purchase-and-sale contracts by real estate brokers licensed by the Department. Specifically, your counsel has asked whether preparing such documents constitutes the unauthorized practice of law.
Judiciary Law § 484 provides in part:
 No natural person shall ask or receive, directly or indirectly, compensation for appearing for a person other than himself as attorney in any court or before any magistrate, or for preparing deeds, mortgages, assignments, discharges, leases or any other instruments affecting real estate, wills, codicils, or any other instrument affecting the disposition of property after death, or decedents' estates, or pleadings of any kind in any action brought before any court of record in this state, or make it a business to practice for another as an attorney in any court or before any magistrate unless he has been regularly admitted to practice, as an attorney or counselor, in the courts of record in this state.
In Matter of Duncan Hill Realty, Inc. v. Department of State,62 A.D.2d 690 (4th Dept), app dismised, 45 N.Y.2d 821 (1978), the court upheld the Department's determination that a broker who was not a licensed attorney demonstrated untrustworthiness and incompetence in violation of Real Property Law § 441-c, finding that when he prepared documents that included detailed mortgage terms he had devised, he engaged in the unauthorized practice of law.
The court recognized that real estate brokers and agents have drafted "simple" contracts between their clients as a part of their professional work. Duncan Hill, supra, 62 A.D.2d at 696. It noted that, historically, as long as brokers had not held themselves out to be attorneys, had confined their activities to transactions in which they were serving as brokers, and had made no additional charge for preparing these incidental and simple documents, courts had held that they were not engaged in the unauthorized practice of law. Id.; cases cited.
As noted by the court in Duncan Hill, 62 A.D.2d 690, supra, however, a real estate broker typically serves either the buyer or the seller. Therefore, the references in the cases to brokers "serving their clients" in relation to a specific transaction rests on the erroneous assumption that brokers represent both the seller and buyer. Duncan Hill, supra, at 696.
The court relied on People v. Title Guarantee and Trust Co., 227 N.Y. 366
(1919), in which the Court of Appeals held that a corporation was not performing legal services when its employees prepared a chattel mortgage and bill of sale for real property by filling in blanks in forms at the customer's direction as an incident to its regular business. The Court noted that under the governing statute, a corporation could not practice law, but that it could perform services "that may be performed by a layman". People v. Title Guarantee and Trust Co., supra, at 373. The Court took judicial notice of "a widespread custom which has prevailed from time out of memory in this state" that laymen may draw simple instruments. People v. Title Guarantee and Trust Co., supra, at 375. If the Legislature intended to curtail this practice, it would have clearly so stated in the statute governing practice of law by individuals.Id.Because the Legislature had not done so the Court concluded that corporations were not barred from preparing simple instruments.[1]
The court in Duncan Hillacknowledged the custom that lay persons have been permitted to prepare simple contracts and went on to identify weaknesses in the justifications commonly advanced for the traditional view.[2]
 . . . the so-called "simple" contract is in reality not simple. It is often the most important legal transaction that the average person will ever undertake — the purchase of a home, and it involves very substantial legal rights which deserve the advice and guidance of a lawyer. The argument that the need for expediting such transactions justifies their consummation without reference to an attorney is specious. The protection of the interests of the parties to such contracts is sufficiently important to justify a little delay for reflection and legal advice, so as to guard against a thoughtless drafting of a hastily conceived contract. The personal interest of the broker in the transaction and the fact that he is employed by one of the opposing parties are further reasons to require that, insofar as the contract entails legal advice and draftsmanship, only a lawyer or lawyers be permitted to prepare the document to ensure the deliberate consideration and protection of the interests and rights of the parties. Duncan Hill, supra, 62 A.D.2d at 696-97; footnote omitted.
The court noted that the statutes forbidding unauthorized practice of law were enacted to protect the public and concluded that the privilege accorded real estate brokers and agents "must be circumscribed for the benefit of the public to ensure that such professionals do not exceed the bounds of their competence and, to the detriment of the innocent public, prepare documents the execution of which requires a lawyer's scrutiny and expertise." 62 A.D.2d at 698. The court noted that the American Bar Association and the National Association of Real Estate Brokers had established practical guidelines. Duncan Hill, supra, at 697 n 2. The court also noted that the National Conference of Lawyers and Realtors (a joint committee of the American Bar Association and the National Association of Real Estate Brokers [Duncan Hill, supra, at 699, n 4]) had prepared a model form contract of sale for review by State and local bar associations and realtor committees, which may amend the model to conform to local law and custom. Duncan Hill, supra, at 698 n 4.[3]
Recognizing the intent to protect the public, the court went on to state:
 It is for this reason that real estate brokers and agents must refrain from inserting in a real estate purchase offer or counteroffer any provision which requires the exercise of legal expertise. Thus it is not proper for such a broker to undertake to devise the detailed terms of a purchase-money mortgage or other legal terms beyond the general description of the subject property, the price and the mortgage to be assumed or given. A real estate broker may readily protect himself from a charge of unlawful practice of law by inserting in the document that it is subject to the approval of the respective attorneys for the parties. Moreover, a real estate broker or agent who uses one of the recommended purchase offer forms referred to above, or one recommended by a joint committee of the bar association and realtors association of his local county, who refrains from inserting provisions requiring legal expertise and who adheres to the guidelines agreed upon by the American Bar Association and the National Association of Real Estate Brokers, above noted, has no need to worry about the propriety of his conduct in such transactions. 62 A.D.2d at 701.
You have advised us that the Department continues to apply the standards set forth in Duncan Hillin administrative proceedings where brokers are charged with untrustworthiness or incompetence based on the alleged unauthorized practice of law.[4]
We believe that in setting standards for the unlawful practice of law by real estate brokers regarding the preparation of purchase and sale contracts consideration should be given to the tradition in this State of allowing lay persons to draft simple contracts. However, this factor must be tempered by the fact that the so-called simple contract will in this context affect very substantial legal rights — the purchase of a home. Also, we take into consideration that typically a broker representing one party to the transaction prepares documents that affect the legal rights of both the buyer and the seller.
Under these circumstances, we believe that a broker or realtors' association that prepares a simple fill-in-the-blanks purchase and sale contract can avoid the unlawful practice of law by including in the contract a condition making it subject to approval by each party's attorney. Alternatively, brokers can utilize a fill-in-the-blanks form that has been approved by a recognized bar association in conjunction with a recognized realtors' association. Such an approved form would only require that the real estate brokers fill in non-legal provisions such as the names of the parties, the date and location of the closing, a description of the property, the consideration for sale and any other relevant facts. The brokers would not be required to develop any "legal terms". Further, since the contract establishes significant legal rights and obligations, it should clearly and prominently indicate on its face that it is a legally binding document and clearly and prominently recommend that the parties seek advice and counsel from their lawyers prior to affixing their signature to the document.
The brokers must refrain, even with respect to these simple fill-in-the-blanks contracts, from providing legal advice to their clients. Nor may they discourage the parties from seeking advice from their attorneys. Brokers may not add provisions to the standard fill-in-the-blanks contracts unless they make the entire contract subject to and conditioned upon the review and approval of each party's attorney. Brokers may provide purchase and sale contracts, subject to the above conditions, only as an incident of the purchase and sale of real estate and may not charge a separate fee for preparation of the contract or share in the fees of attorneys for preparation or review of these contracts.
Very truly yours,
DENNIS C. VACCO, Attorney General
[1] In concluding that the appellant corporation did not represent to the public that it practiced law and only filled in the blanks on the chattel mortgage and bill of sale of real property as an incident of its business as a title guarantee and trust company, the Court of Appeals narrowed the inquiry to whether the actual preparation of the document amounted to the rendering of legal services. People v. Title Guaranteeand Trust Co., supra, 227 N Y at 371-372. The Court concluded that the services did not fall within that category. People v. Title Guarantee andTrust Co., supra, at 377. In dictum, the Court noted the potential difficulty of determining what constitutes a simple instrument and the futility of attempting to create a general rule, stating that such determinations must be made on a case-by-case basis. Id., at 377-378.
[2] In People v. Title Guarantee, supra, a 4-3 decision, Judge Pound, in a concurring opinion, could not adopt as a test for performing legal services whether the instruments were simple or complex. "The most complex are simple to the skilled and the simplest often trouble the inexperienced. Skill is sought when another is employed to do the work".People v. Title Guarantee, supra, at 379. If the services are of a character generally performed by lawyers as a part of their ordinary routine, they should be characterized as legal services. People v. TitleGuarantee, supra, at 379-380. Judge Pound concurred in the result, however, based on his finding that the services were incidental to the corporation's business, and it did not represent to the public that it would prepare legal instruments generally. People v. Title Guarantee,supra, at 379-380. In dissenting, Judge Cardozo, joined by two justices, accepted Judge Pound's conception of legal services, finding there was sufficient evidence for the jury's finding of a violation of the statute. People v. Title Guarantee, supra, at 381.
[3] The form was designed with boldface print at the top alerting both parties to the real estate transaction that, when signed, the instrument becomes a binding contract, and cautioning them that it is desirable that they consult their respective attorneys. Duncan Hill, supra, at 698.
[4] Subsequent Appellate Division decisions are consistent with Duncan Hill. See, Matter of Mulford v. Shaffer, 124 A.D.2d 876 (3d Dept 1986) (charge of untrustworthiness and incompetence supported when record showed broker inserted broad, legally significant contingency clause, failed to suggest agreement be reviewed by attorney, gave advice re legal effect of provisions and charged a fee for preparing documents); Matterof Sorrentino v. Shaffer, 125 A.D.2d 956 (4th Dept 1986) (charge of untrustworthiness and incompetence sustained when broker discouraged purchaser from seeking legal advice, failed to use a form advising parties to seek legal advice, and failed to insert a contingency clause essential to protection of buyer's interest); Matter of Tucci v. Dept. of State,63 A.D.2d 835 (4th Dept 1978) (broker engaged in unauthorized practice of law when he drafted legal documents including a revised purchase offer and gave advice as to their legal effect).