(No. 5532. May 1, 1930.)

In re Contempt Proceedings of EASTERN IDAHO LOAN & TRUST COMPANY, a Corporation, and W. L. SHATTUCK; JESS HAWLEY, Petitioner.

[288 Pac. 157.]

O. A. Johannesen, for Defendants.

J. H. Andersen, E. A. Owen, Charles W. Sandles, J. M. Lampert, Wm. M. Morgan and Jess Hawley, for Petitioner.

LEE, J.—This is a proceeding instituted by direction of the Board of Bar Commissioners of the state of Idaho for the purpose of securing an order requiring Eastern Idaho Loan & Trust Company, a corporation, and its president, W. L. Shattuck, to show cause why they and each of them should not be punished for contempt of court, in that they are practicing law and holding themselves out as qualified to practice law therein, without either of them having been admitted to practice by the supreme court of the state of Idaho, and without paying the license fees now prescribed by law for the practice of law.

The petition charges: "That for over a year last past the said corporation and the said W. L. Shattuck pretending to act for it as its President have represented themselves as learned in law, and particularly in the preparation of wills and declarations of trust, and have

solicited by various types of advertisements that they are so competent and able, and have at various times advised persons desiring to make a disposition of their property by will or by trust as to the law of wills and trusts." As specific instances, it is alleged that the corporation had a sign on its window, reciting in part:

"EASTERN IDAHO LOAN & TRUST COMPANY
TOTAL ASSETS $500,000
W. L. SHATTUCK, Mgr.
. . . . WILLS, TRUSTS, GUARDIANS, ADMINIS-
TRATOR, ESCROW AGREEMENTS."

That the corporation and W. L. Shattuck have published and caused to be generally circulated in Idaho Falls and territory adjoining a calendar on which is the following printed data:

"EASTERN IDAHO LOAN & TRUST COMPANY.
INVESTMENT BANKERS.
Park Ave. and B St.                    Idaho Falls, Idaho.
. . . . We make a specialty of Drawing Contracts, Deeds and Mortgages. . . . .

HAVE YOU MADE YOUR WILL AND PROVIDED FOR THE PROPER HANDLING OF YOUR ESTATE AFTER YOUR DEATH?

It will pay you to see us about this important matter. We can help you arrange your affairs so as to save your loved ones expenses and annoyance after your death. Don't defer till after your death what you should do while alive."

That the said defendants have also secured the publication of a pamphlet entitled:

"HOW TO CONSERVE YOUR ESTATE,"
and have distributed the same to a large number of persons in Idaho Falls and surrounding territory, in the introductory part of which pamphlet appears:

"We make a business of advising in all such matters, and are specialists in drawing trust agreements, Declara-

tions of trust and wills. We make no charge for consultations. Come and see us if interested.''

And that in the body of said pamphlet it was announced:

''The Eastern Idaho Loan & Trust Company is a specialist in the matter of drawing trust agreements, Declarations of Trust and Wills, and in the management of Lands, securities, and other properties comprising Estates. It has every facility for doing this with speed and accuracy and in the safest, cheapest and best manner.''

By these statements, petitioner avers, the said corporation and the said W. L. Shattuck ''hold themselves out as capable of practising law, and solicit employment therefor.'' Following these, are several allegations made on petitioner's information and belief of specific instances where the defendants drew wills and other papers, charging and receiving a fee from the person served in each instance. Defendants demurred generally and on the ground of uncertainty.

First, they urged that the statute inhibits only activities in courts of record, and, second, that they are not engaged in the practice of law as the term has been understood by our law-making body. In support of their first contention, they cite C. S. 6571 providing:

''If any person shall practise law in any court, except a justice's court, without having received a license as attorney and counselor, he is guilty of a contempt of court.''

Evidently with the direct purpose of remedying a situation made possible by this section, the legislature of 1923 enacted the following:

''If any person shall, without having become duly licensed to practise, or whose license to practise shall have expired either by disbarment, failure to pay his license fee, or otherwise, practise or assume to act or hold himself out to the public as a person qualified to practise or carry on the calling of a lawyer, he shall be guilty of an offense under this act, and on conviction thereof be fined not to exceed five hundred dollars, or be imprisoned for a period of not to exceed six months, or both. (Chap. 211, sec. 17.)''

Deeming further strengthening necessary, the succeeding Session of 1925 amended this enactment to read:

"If any person shall, without having become duly *admitted and* licensed to practise *law within this* state or whose *right* or license to practise therein shall have terminated either by disbarment, *suspension,* failure to pay his *license* or otherwise, practise or assume to act or hold himself out to the· public as a person qualified to practise or carry on the calling of a lawyer *within this state,* he shall be guilty of an offense under this Act and on conviction thereof be fined not to exceed Five Hundred Dollars, or be imprisoned for a period of not to exceed six months, or both, *and if he shall have been admitted to practice law he shall in addition be subject to suspension under the proceedings provided by this Act.* (Chap. 89, sec. 6.)"

And to make precaution doubly sure, the Session of 1929 went back and amended C. S. 6571 which as amended now reads as follows:

"If any person shall practice law . . . . *or hold himself out as qualified to practice law in this state without having been admitted to practice therein by the Supreme Court and without having paid all license fees now or hereafter prescribed by law he is guilty of contempt both in the Supreme Court and District Court for the District in which he shall so practice or hold himself out as qualified to practice. Provided, that any person may appear and act in a Justice Court as representative of any party to a proceeding therein, but shall do so without making a charge or collecting a fee therefor.* (Chap. 63, sec. 3.)"

At this stage of our legislation, there can be no question that the statute is consciously leveled at the unadmitted and unlicensed practitioner functioning either within or without the courts. Defendants contend that their specially advertised activities do and did not constitute practicing law; that they but do and did what hordes of reputable insurance men, realtors and bankers have been doing for years, and what chapter 192, section 2, of the Session Laws of 1929 authorizes them to do. Such .work as the

mere clerical filling out of skeleton blanks or drawing instruments of generally recognized and stereotyped form effectuating the conveyance or incumbrance of property, such a simple deed or mortgage not involving the determination of the legal effect of special facts and conditions, is generally regarded as the legitimate right of any layman. It involves nothing more or less than the clerical operations of the now almost obsolete scrivener. But, where an instrument is to be shaped from a mass of facts and conditions, the legal effect of which must be carefully determined by a mind trained in the existing laws in order to insure a specific result and guard against others, more than the knowledge of the layman is required; and a charge for such service brings it definitely within the term, "practice of the law."

The paragraphs of section 2, chapter 192, *supra*, relied upon by defendants are as follows:

"(f) To accept trust from and execute trust for married women in respect to their separate property, and to be their agents in the management of such property, or to transact any business with relation thereto.

(g) To act under order or appointment of any court of record as guardian, receiver or trustee of the estate of a minor, and as depository of any moneys paid into court, whether for benefit of any such minor or other persons, corporation or party.

(h) To take, accept and execute any and all such legal trusts, duties and powers in regard to the holding, management and disposition of any estate, real or personal, and the rents and profits thereof, or the sale thereof, as may be granted or confided to it by any court of record or by any person, corporation, municipality or other authority; and it shall be accountable to all parties in interest for the faithful discharge of every such trust, duty or power which it may accept.

(k) To act as executor under the last will or administrator of the estate of any deceased person, or as guardian of any infant, insane person, idiot or habitual drunkard,

or trustee for any convict in the penitentiary under appointment of any court of record having jurisdiction of the estate of such deceased person, infant, insane person, idiot, habitual drunkard or convict.''

Nowhere do these enactments confer upon trust companies the power to draft wills, trust declarations or other instruments creating the duties such companies are authorized to ''take, accept and execute.'' Their work is purely executive and ministerial, having to do with subject matter in the inception of which they are not, and cannot be permitted to participate.

''A corporation can neither practice law nor hire lawyers to carry on the business of practising law for it. . . . . Though all directors and officers of the corporation be duly licensed members of the legal profession, the practice of law by the corporation would be illegal nevertheless.'' (*People v. California Protective Corp.*, 76 Cal. App. 354, 244 Pac. 1089, 1091.)

''The right to practise law attaches to the individual and dies with him. It cannot be made the subject of business to be sheltered under the cloak of a corporation having marketable shares descendible under the laws of inheritance.'' (*State v. Merchants' Protective Corp.*, 105 Wash. 12, 177 Pac. 694, 696.)

From the facts admitted by the demurrer it is apparent that defendants are illegally holding themselves out to the public as specialists in certain branches of the practice of law. Whether or not they have actually engaged in such practice is not admitted by the demurrer, since the specific instances set forth in the petition are alleged upon information and belief, and as such insufficient to support a proceeding like this, *quasi* criminal in its nature. (*Selowsky v. Superior Court*, 180 Cal. 404, 181 Pac. 652.)

The demurrer is overruled with leave to amend in the indicated particulars within twenty days, if petitioner so desires. If no amendment be made within such period, defendants are directed to answer within five days from the

expiration of such time, and, in case of amendment, to answer or plead within ten days thereafter.

Budge, Varian and McNaughton, JJ., concur.

GIVENS, C. J., Concurring Specially.—I concur except as to the holding that the allegations on information and belief are insufficient.

(May 29, 1930.)

FINAL ORDER.

LEE, J.—In lieu of an answer to the order to show cause hereinbefore issued, defendants have filed a stipulation of facts detailing some of their activities as in the main charged in the petition and admitted by the demurrer thereto.

To recount the facts would serve no useful purpose, and would but necessitate a reiteration of much of the former opinion discussing the demurrer. Suffice it to say defendants are shown to have been illegally practicing law as charged, and are at present illegally holding themselves out as qualified to do so.

It appears that the defendant, W. L. Shattuck, and the officers of the corporation involved, are men of good reputation and character in their city and the surrounding country, and are regarded as law-abiding citizens. While, under the statute, defendants are guilty of contempt, and therefore subject to pains and penalties, it is the object of courts to check up as well as punish. We are satisfied that there has been on the part of the defendants no consciously wilful or flagrant disregard of, or desire to flout the legislative restrictions as to the authorized practice of law, and will for the nonce content ourselves with admonishing them to desist forthwith from any further activity in the respects hereinabove indicated.

Givens, C. J., and Budge, Varian and McNaughton, JJ., concur.