(No. 6382. May 5, 1938.)

In the Matter of Contempt Proceedings Against S. E. MATTHEWS.

[79 Pac. (2d) 535.]

W. H. Witty and Clyde Bowen, for State Bar Commission.

O. R. Baum, Merrill & Merrill, and R. J. Dygert, for S. E. Matthews.

BUDGE, J.—This is a contempt proceeding. A statement of the case appears in *In re Matthews*, 57 Ida. 75, 62 Pac. (2d)

578, 111 A. L. R. 13, wherein a motion to make the affidavit or complaint more definite and certain and a demurrer to the affidavit or complaint were considered, both overruled and the defendant Matthews required to answer. The statement contained in the before-mentioned opinion is subject to the changes made by stipulation as hereafter disclosed. Upon S. E. Matthews filing his answer, this court, by order, referred the cause to the Honorable Guy Stevens, district judge of the sixth judicial district, ''for the purpose of taking evidence upon the issues formed by the pleadings herein and of making findings of fact and conclusions of law,'' and upon the matter coming on for hearing the following stipulation, omitting the introductory portion thereof, was entered into between attorneys for the State Bar Commission and attorneys for S. E. Matthews:

''1. That for more than ten years last past, and prior to the filing of the affidavit or complaint in these proceedings, the defendant, S. E. Matthews, had been conducting an abstract, insurance, and real estate business at Soda Springs, Idaho, and in addition thereto has been a qualified Notary Public and a public stenographer. That in connection with his abstract work he maintains a complete set of abstract books including the extensive plats of all the lands of Caribou County, Idaho. That during the time that he was operating his business, as aforementioned, the said S. E. Matthews, at the request of certain persons and individuals, filled out forms of deeds, mortgages, contracts, leases, and bills of sale, and before so doing, and as a part of said service, checked the records, made reference to his abstract books and plats for the descriptions of the property, and thereafter took the acknowledgments of such persons and for such services received compensation.

''2. That in the month of June, 1934, there appeared in the Soda Springs Sun an advertisement, which referred to the business of S. E. Matthews, and carried the words 'Correct Legal Conveyances' and as to such advertisement, the following are the facts:

''That shortly prior to the first publication of said advertisement in June, 1934, Mr. Hildreth, the editor of the

Soda Springs Sun, called S. E. Matthews and asked him for an advertisement, and Matthews promised to give him one; that thereafter, and prior to the date of said first publication, the said Hildreth called Matthews again and stated that he was going to run an ad, and would write it himself, which the said Hildreth did; that said advertisement was published continuously; that is to say, each week from the month of June, 1934, until the month of November, 1935, when said advertisement was discontinued at the direction of said Matthews. That at no time during the publication of said advertisement did the said Matthews wilfully or intentionally violate the law, if any law existed, with respect thereto; and did not know at any of said times that he was violating the law, if any law existed, with reference to the publication of said advertisement; and that at no time did he wilfully or intentionally commit a contempt of this Court.

"3. That at no time prior to the filing of the affidavit or complaint in said cause, or at all, did the said S. E. Matthews wilfully, intentionally, or knowingly violate the law or any law, if any existed, with reference to the practice of law in the State of Idaho; and that in the gathering of descriptions, filling out of said instruments, etc., and notarization of said instruments alleged in the affidavit or complaint, the said S. E. Matthews did not do so with any intention of violating the law, if any law existed, or committing contempt of this Court.

"4. That at no time prior to the filing of the complaint in this case was the said S. E. Matthews authorized to practice law in the State of Idaho.

"5. That any other item or charge in said affidavit or complaint not hereinbefore specifically referred to are withdrawn and may be disregarded by the Court."

Judge Stevens, upon the matter finally being submitted to him, found and concluded as follows:

"The facts in the above entitled action having been heretofore stipulated in writing and such written stipulation having been filed herein, said stipulation of facts is hereby adopted by the Court as the facts found herein.

## "CONCLUSIONS OF LAW

"· · · · · · · · · · · · ·

"1.

"That the said S. E. Matthews did not practice law or hold himself out as qualified to practice law in the State of Idaho in violation of the provisions of section 3–104, Idaho Code Annotated.

"2.

"That the said S. E. Matthews is not guilty of contempt as charged in the affidavit filed on May 21st, 1936.

"3.

"That said proceedings should be dismissed and the said S. E. Matthews purged of the alleged contempt."

Attorneys for the State Bar Commission filed exceptions in this court to the foregoing findings and conclusions. The attorneys for Matthews filed a motion that this court adopt the findings of fact and conclusions and enter judgment of dismissal, which motion attorneys for the state bar commission moved to strike. No useful purpose would be served by passing upon the various motions and we shall proceed to a determination of the matter upon the merits.

The ultimate question, namely whether the defendant S. E. Matthews should be held in contempt of the courts of this state, may be answered by determining the two following questions:

First: Did the acts of defendant Matthews as set forth in the stipulation of facts constitute the practice of law in violation of sections 3–104 and 3–420, I. C. A., and

Second: Did the acts of defendant Matthews as set forth in the stipulation of facts constitute Matthews holding himself out as qualified to practice law, in violation of sections 3–104 and 3–420, I. C. A.?

An examination of the stipulation discloses that Matthews conducts and has for more than 10 years been engaged in the abstract, insurance, and real estate business and has a complete set of abstract books, including extensive plats of all lands of Caribou county, and that he is a notary public and a public stenographer. During the time he was operating his business "the said S. E. Matthews, at the request of certain persons and individuals, filled out forms of deeds, mortgages,

contracts, leases, and bills of sale, and before so doing, and as a part of said service, checked the records, made reference to his abstract books and plats for the descriptions of the property, and thereafter took acknowledgments of such persons and for such services received compensation.'' He did not, as the stipulation discloses, *make, draft, draw* or *formulate* instruments, but at the request of persons and individuals filled out forms of deeds, mortgages, contracts, leases and bills of sale. He did not give legal advice, nor appear in any of the courts of the state as an attorney, nor in any manner engage in the practice of law. He did nothing more than conduct his abstract business, take acknowledgments as a notary public, and act as a scrivener in filling out deeds, mortgages, contracts, leases, and bills of sale.

In *In re Matthews, supra,* this court used the following language with reference to what constitutes the practice of law:

''The practice of law as generally understood is the doing or performing services in a court of justice, in any matter depending therein, throughout its various stages, and in conformity with the adopted rules of procedure. But in a larger sense, it includes legal advice and counsel, *and the preparation* of instruments and contracts by which legal rights are secured, although such matter may or may not be depending in a court. 49 C. J., sec. 5, p. 1313. See, also, *People v. Alfani,* 227 N. Y. 334, 125 N. E. 671; *In re Opinion of the Justices,* 289 Mass. 607, 194 N. E. 313, 317; *In re Duncan,* 83 S. C. 186, 65 S. E. 210, 24 L. R. A., N. S., 750, 18 Ann. Cas. 657; *People v. People's Stock Yards State Bank,* 344 Ill. 462, 176 N. E. 901, 907; *Eley v. Miller,* 7 Ind. App. 529, 34 N. E. 836; *Boykin v. Hopkins,* 174 Ga. 511, 162 S. E. 796, 799, 800.''

As I read the stipulation Matthews did not *prepare* instruments and contracts by which legal rights are secured as that term is used in the foregoing quotation, as to bring him within the rule therein announced. As disclosed by the authorities, the ''preparation of instruments and contracts by which legal rights are secured,'' involves something more than the mere filling in of blank forms and was not intended to include merely such acts. Such conclusion is borne out

by the cases cited in support of the rule in *In re Matthews,*
*supra,* which is that announced in 49 C. J., sec. 5, p. 1313,
the following appearing in such authorities:

In *People v. People's Stock Yards State Bank,* 344 Ill. 462,
176 N. E. 901, 907, based in part on *In re Eastern Idaho*
*Loan & Trust Co.,* 49 Ida. 280, 288 Pac. 157, 73 A. L. R. 1323,
it is said:

"Where the rendering of such services involves the use of
legal knowledge or skill, or where legal advice is required and
is availed of or rendered in connection with such transactions,
this is sufficient to characterize the services as practicing
law. *People v. Schreiber,* 250 Ill. 345, 95 N. E. 189; *Peo-*
*ple v. Alfani, supra; People v. Title Guarantee & Trust*
*Co.,* 227 N. Y. 366, 125 N. E. 666; *In re Eastern Idaho Loan*
*& Trust Co.,* 49 Ida. 280, 288 Pac. 157, 73 A. L. R. 1323.

"Where a will, contract, or other instrument is to be
*shaped* from facts and conditions, the legal effect of which
must be carefully determined by a mind trained in the exist-
ing laws in order to insure a specific result and guard against
others, more than the knowledge of the layman is required,
and a charge for such service brings it definitely within the
term 'practice of the law.' *In re Eastern Idaho Loan &*
*Trust Co., supra.*" (Emphasis inserted.)

In *Eley v. Miller,* 7 Ind. App. 529, 34 N. E. 836, the rule is
stated as follows:

"But in a larger sense it includes legal advice and counsel,
and the preparation of legal instruments and contract by
which legal rights are secured, although such matter may or
may not be pending in a court. *The mere act of a scrivener*
*who writes something dictated by another would not be*
*practicing law.*" (Emphasis inserted.)

"No valid distinction, so far as concerns the questions
set forth in the order can be drawn between that part of
the work of the lawyer which involves appearance in court
and that part which involves the *advice and drafting of in-*
*struments* in his office. The work of the office lawyer is the
groundwork for future possible contests in courts. It has
profound effect on the whole scheme of the administration of
justice. It is performed with that possibility in mind, and
otherwise would hardly be needed. . . . . The underlying

reasons which prevent corporations, associations, and individuals other than members of the bar from appearing before the courts apply with equal force to the performance of these customary functions of attorneys and counsellors at law outside of courts.'' (Emphasis inserted.) (*In re Opinion of the Justices,* 289 Mass. 607, 194 N. E. 313.)

In *People v. Alfani,* 227 N. Y. 334, 125 N. E. 671, it is said:

''He was not an attorney and counselor at law, *but had for a long period of time drawn legal papers and instruments for hire* and held himself out to the public as being in that business. . . . . Distinct from such work he also *drew legal papers,* contracts for real estate, deeds, mortgages, bills of sale, and wills. A large sign placed over his dining room or basement window bore the words in big letters 'Notary Public—Redaction of All Legal Papers.' The defendant said 'redaction' meant the *drawing* of legal papers. . . . . The defendant advised that a bill of sale be drawn, and that the purchaser give back a chattel mortgage. He explained about the necessity of filing the mortgage in the county clerk's office and the foreclosure by a city marshal in case of nonpayment. The papers were drawn and executed, for which the defendant charged and received $4. Before leaving Galls said, 'In case I have any trouble of any kind, and I need any legal advice, can I come back to you?' To which Alfani replied, 'Yes.' . . . . The *drawing* of agreements, the organization of corporations and preparing papers connected therewith, the *drafting* of legal documents of all kinds, including wills, are activities which have long been classed as law practice.''

In *Boykin v. Hopkins,* 174 Ga. 511, 162 S. E. 796, it is said:

''The New York Court fully approved the definition of what constitutes the practice of law as laid down by the Supreme Court of South Carolina. ' ''The practice of law,'' as the term is now commonly used, embraces much more than the conduct of litigation. The greater, more responsible, and delicate part of lawyer's work is in other directions. *Drafting instruments,* creating trusts, *formulating* contracts, *drawing* wills and negotiations, all require legal knowledge and

power of adaption of the highest order. Besides these employments, mere skill in trying lawsuits where ready wit and natural resources often prevail against profound knowledge of the law, is a relatively unimportant part of the lawyer's work.' *People v. Title Guarantee etc. Co.,* 180 App. Div. 648, 168 N. Y. Supp. 278, 280.'' (Emphasis inserted.)

As disclosed by the stipulation this case is not one of drafting, drawing, formulating, or the preparation of instruments of the delicate nature requiring legal knowledge and power of adaption of the highest order, such as referred to in the foregoing cases. In *In re Eastern Idaho Loan & Trust Co., supra,* as distinguished from the instant case the trust company held itself out as competent to *draft wills* and *trust agreements,* and, *In re Brainard,* 55 Ida. 153, 39 Pac. (2d) 769, dealt with a former probate judge, who for compensation, *advised* persons in probate matters and *prepared and filed* papers in connection therewith.

Fully appreciating and commending the efforts of the bar commission and bar organizations in their effort to prevent the unlawful practice of law and to secure punishment of those individuals and corporations practicing law in violation of the statutes of this state, there are certain restrictions to be considered to the end that the profession be not brought into reproach. It would be an anomaly to hold that every individual, abstracter, realtor, banker, title insurance company, trust company, etc., who fills out a blank deed, mortgage, bill of sale, contract, or such instrument and receives compensation therefor is engaged in the practice of law within the spirit and meaning of sections 3–104 and 3–420, I. C. A., and it appears that the statement or matter, appearing in *In re Eastern Idaho Loan & Trust Co., supra,* as follows:

''Such work as the mere clerical filling out of skeleton blanks or drawing instruments of generally recognized and stereotyped form effectuating the conveyance or incumbrance of property, such a simple deed or mortgage not involving the determination of the legal effect of special facts and conditions, is generally regarded as the legitimate right of every layman. It involves nothing more nor less than the clerical operations of the now almost obsolete scrivener. But where

an instrument is to be *shaped* from a mass of facts and conditions, the legal effect of which must be carefully determined by a mind trained in the existing laws in order to insure a specific result and guard against others, more than the knowledge of the layman is required; and a charge for such service brings it definitely within the term, 'practice of the law.'" (Emphasis inserted.)

should be invoked as the rule controlling in this case.

The stipulation of facts negatives that Matthews was engaged in the shaping of instruments from a mass of facts and conditions which required the careful determination of a trained mind in the existing law of this state, or that he was called upon to or attempted to secure a specific result or reach a legal conclusion, or was called upon to pass upon or determine the legal rights of others. His work, as the stipulation discloses, consisted of nothing more than the work of a scrivener, done at the request of persons calling upon him for such services, such work as a layman might do. It may be well to here point out that the affidavit or complaint charged Matthews, among other things, with the preparation of probate papers in probate matters and other types of legal practice. The stipulation contains nothing with reference to such charges and recites that any other item or charge in said affidavit or complaint not herein specifically referred to are withdrawn and may be disregarded by the court. The acts stipulated did not constitute the practice of law.

The stipulation discloses that an advertisement was published in the local newspaper in Soda Springs, referring to the business of S. E. Matthews, which advertisement was prepared by the editor of the paper, and carried the words: "Correct Legal Conveyances." The stipulation does not disclose in what connection the words were used,—whether they referred to the drafting, formulation or preparation of conveyances, whether reference was to titles and the business of abstracting, or whether it referred to the handling of simple blank forms for such purposes.

The acts of Matthews as stipulated did not constitute the practice of law or of holding oneself out as qualified to practice law and were not a violation of sections 3–104 and 3–420, I. C. A.

It follows from what has been said that the proceedings should be dismissed. No costs are allowed.

Ailshie and Givens, JJ., concur.

Holden, C. J., did not participate.

Morgan, J., deeming himself disqualified, did not sit with the court in this case nor participate in the decision.