INGHAM COUNTY BAR ASSOCIATION *v.*
WALTER NELLER COMPANY.

SAME *v.* EDWARD G. HACKER COMPANY.

1. Appeal and Error—Questions Reviewable—Conduct of Ouster Proceedings.

The propriety of defendant realtors conducting proceedings before circuit court commissioners for repossession of property in cases of nonpayment of rent and after notice to quit is not discussed, where no appeal was taken from portion of decree restraining defendants from such activity.

References for Points in Headnotes

[1] 3 Am Jur, Appeal and Error § 245 *et seq.*
[2] See, generally, 5 Am Jur, Attorneys at Law § 25.
[2] Right of corporation to perform or to hold itself out as ready to perform functions in the nature of legal services.   73 ALR 1327; 105 ALR 1364; 157 ALR 282.
[3] 50 Am Jur, Statutes § 539.
[4, 6, 7] 5 Am Jur, Attorneys at Law § 3.
[4, 6, 7] What amounts to practice of law.   111 ALR 19; 125 ALR 1173; 151 ALR 781.
[8] 14 Am Jur, Costs §§ 37, 91.

* Constitution of the United States, art 1, § 8.—Reporter.

2. ATTORNEY AND CLIENT—PRACTICE OF LAW—CONSTRUCTION OF STATUTES—CORPORATIONS.

Statute prohibiting corporations from practicing law which specifically excepted application of its provisions to corporations lawfully engaged in a business authorized by the provisions of any existing statute *held*, to express legislative intent not to restrict powers conferred by such other acts (CL 1948, § 450.681).

3. SAME—CONSTRUCTION OF STATUTES—PRACTICE OF LAW—REAL-ESTATE BROKERS.

The statute licensing real-estate brokers is not without legal effect because in conflict with an earlier statute making it unlawful to practice law in this State by a person not duly licensed to do so, merely because the earlier statute was not expressly repealed and should not be impliedly repealed (CL 1948, § 451.201 *et seq.*; § 601.61).

4. SAME—PRACTICE OF LAW—STATUTES.

The statutes do not define the practice of law.

5. BROKERS—CONVEYANCING—PRINTED FORMS.

Licensed real-estate brokers may engage in conveyancing, limited to the filling out of standard printed forms as printed by stationers, when such action is incidental to the items of business they are transacting, no extra charge is made therefor and no advice or counsel is given as to the legal effect and validity of such instruments (CL 1948, § 451.208).

6. ATTORNEY AND CLIENT—PRACTICE OF LAW—CONVEYANCES.

The preparation of conveyances of real estate and personal property for others, for a consideration, comes within the usual and ordinary definition of "practice of law."

7. SAME—COURTS—PRACTICE OF LAW.

It is left to the courts of this State to define "practice of law" and while the line between what is and what is not such practice cannot be drawn with precision, it is not illegal for persons not licensed as attorneys to fill out simple legal forms incident to the conduct of a lawful business, where no additional charge is made for the action nor advice given as to legal effect and validity.

8. COSTS—PUBLIC QUESTION—PRACTICE OF LAW.

No costs are allowed in suit to restrain realtors from engaging in the alleged unauthorized practice of law, a public question being involved.

Appeal from Ingham; Hayden (Charles H.), Coash (Louis E.), and Salmon (Marvin J.), JJ., sitting *en banc*. Submitted October 12, 1954. (Docket Nos. 63, 64, Calendar Nos. 46,135, 46,136.) Decided April 14, 1955. Rehearing denied June 7, 1955.

Petitions by the Ingham County Bar Association against the Walter Neller Company and certain of its employees and the Edward G. Hacker Company and certain of its employees to have them adjudged guilty of contempt of court and to enjoin them from the practice of law. Petitions consolidated for trial and appeal. State Bar of Michigan intervened as party plaintiff. Decree enjoining only certain actions. Intervenor plaintiff appeals. Affirmed.

*Charles L. Goldstein* and *G. Leslie Field,* for intervenor plaintiff.

*Jennings, Fraser, Parsons & Trebilcock,* for defendants.

*Amicus Curiae:*

Michigan Real Estate Association, by *Neithercut & Neithercut* and *George R. Sidwell.*

Butzel, J. The Ingham County Bar Association, plaintiff, brought proceedings to have Walter Neller Company and Edward G. Hacker Company, both Michigan corporations, corporate defendants, and Arnold J. Sprayman, Harold Davis and Alice L Broadbent, individual defendants, adjudged guilty of contempt of court. The specific charge is that they practiced law illegally. There is no testimony whatsoever to indicate that Herman Cook, Jr., also

an individual defendant, ever performed any acts which plaintiff alleges constitute the illegal practice of law. He will not be further referred to in this opinion. Plaintiff also sought an injunction against all of the defendants to restrain them from what plaintiff claims was the illegal practice of law. The State Bar of Michigan intervened as a plaintiff and we shall also include it as plaintiff. The Michigan Real Estate Association filed a brief as *amicus curiae*. In view of our decision it is unnecessary to consider other questions raised by the latter's brief.

The defendant corporations are realtors in the city of Lansing, Michigan, and respectively employ the individual defendants. They do a large volume of real-estate business, manage properties, collect rents for some of their clients, and one of them represents an insurance company which makes loans on real-estate mortgages. In the conduct of their work they fill in standard printed forms of agreements of purchase and sale, deeds, land contracts, mortgages, assignments of mortgages, notices to quit, et cetera, as printed by stationers. They do this solely in connection with properties in which their services are enlisted in the course of the particular transactions in which they are involved, and for no one else, nor do they receive any extra fees or compensation whatsoever for these incidental services. The testimony shows that if forms of conveyance are necessary in these transactions the defendants fill in on the printed forms the names of the parties, the date, the description of the property, terms of the contract, et cetera; that they draw instruments such as deeds, mortgages, et cetera, after the abstract has been examined by an attorney; and that if something other than a simple warranty deed, land contract or other document is contemplated,

an attorney is called upon to draw it. Plaintiffs also claim that in cases of nonpayment of rent and after notice to quit, defendants conducted proceedings before the circuit court commissioner for repossession of the property.

Plaintiffs claim that all the parties, licensed brokers but not licensed attorneys, thus engaged in the practice of law in violation of CL 1948, § 601.61 (Stat Ann § 27.81), and that the 2 corporate defendants thus also engaged in the practice of law contrary to the provisions of CL 1948, § 450.681 (Stat Ann § 21.311). Defendants specifically denied the charge that they had acted illegally and assert that what they did was not the practice of law but only the filling in of simple forms without exacting or receiving extra compensation, and solely as incidental to real-estate transactions in which they were engaged.

The main and real question in the case is whether such transactions, as hereinbefore described, constitute the practice of law. The plaintiffs brought these proceedings in a commendable effort to protect the public against the illegal practice of law. All parties admit that the question presented is one of first impression in this State although it has been passed upon in a few other jurisdictions. The case was heard by the 3 judges of Ingham county sitting *en banc* and they unanimously held that the filling out of the standardized blank forms, as described by the testimony, was not the practice of law when it was only incidental to the particular transactions they, as licensed brokers, were engaged in; but that in the proceedings before the circuit court commissioner, the examining and cross-examining of witnesses constituted the practice of law and would be enjoined. There is no appeal from the part of the decree restraining defendants from such activity be-

fore the circuit court commissioners. Our discussion is therefore limited to the question stated as follows by appellees:

"Have defendants practiced law or engaged in the law business contrary to CL 1948, § 601.61 (Stat Ann § 27.81), by reason of their having completed and filled out printed forms of offers to purchase real estate, warranty deeds, quitclaim deeds, land contracts, land contract assignments, leases, and notices to terminate tenancy *incidental* to their handling and consummation of real-estate transactions *in which defendants were acting as real-estate brokers,* no separate charge having been made therefor?"

Plaintiffs claim that only a duly-licensed attorney has the right to fill in these forms. They contend that the defendant realtors violated CL 1948, § 601.-61 (Stat Ann § 27.81), which provides:

"It shall be unlawful for any person who is not a regularly licensed attorney and counselor of this State, * * * to practice law or to engage in the law business; or to represent himself as an attorney at law, or to use any sign, letterhead, return envelope, or writing, printing or advertising of any kind whatever in or by which he designates or represents his place of business as a law office or himself as a lawyer, attorney at law, counselor, or in any way represent to the public that he is an attorney at law, or his place of business a law office; or to make any representations to any person or persons either spoken or written, intended to lead such person or persons to believe that the person making such representations is an attorney at law;"

and CL 1948, § 450.681 (Stat Ann § 21.311), which makes it unlawful for any corporation to practice law with the exception that:

"This section shall not apply to any corporation
* * * lawfully engaged in a business authorized
by the provisions of any existing statute."

Of this latter provision, the Court in *Detroit Bar
Association* v. *Union Guardian Trust Company,* 282
Mich 216, 225, stated:

"It is apparent that this provision was embodied
in the statute by the legislature so it might be def-
initely understood that it was not the intent of the
legislature by this enactment to restrict the powers
conferred upon corporations by other acts of the
legislature under which such corporations were or-
ganized."

The licensing and regulation of real-estate brokers
is provided for in CL 1948, § 451.201 *et seq.* (Stat
Ann 1953 Cum Supp § 19.791 *et seq.*). In addition,
the corporation and securities commission is
charged with the administration and enforcement
of these provisions. CL 1948, § 451.204 (Stat Ann
1953 Cum Supp § 19.794). Further, and most impor-
tant, CL 1948, § 451.208 (Stat Ann 1953 Cum Supp
§ 19.798), provides:

"The commission shall also require each applicant
for broker's or salesman's license to pass an exam-
ination establishing, in a manner satisfactory to
the commission, that the applicant has a fair knowl-
edge of the English language, including reading,
writing, spelling and elementary arithmetic, a sat-
isfactory understanding of the *fundamentals of real
estate practice and of the laws and principles of real
estate conveyancing, deeds, mortgages, land con-
tracts, leases,* the obligations of a broker to the pub-
lic and his principal, and the provisions of the Mich-
igan statutes defining, regulating and licensing real
estate brokers and salesmen: Provided, however,
That the commission shall have the authority to re-
quire at its discretion written examination or writ-
ten re-examination of brokers and/or salesmen, *and*

*in these cases that passing grades, satisfactory to
the commission shall be required as a condition pre-
cedent to reissuance of licenses to such brokers
and/or salesmen."* (Emphasis supplied.)

Plaintiff claims that this latter provision was en-
acted subsequently to the unlawful practice of law
statute above quoted, and conflicts with it, that in-
asmuch as the earlier statute has not been expressly
repealed or amended (and should not impliedly be
so) the last quoted statute is of no legal effect. We
cannot subscribe to this view.

In addition it is persuasive but not conclusive that
the regulations and rules of the real-estate division
of the corporation and securities commission bear
out our interpretation of the statute. Accordingly
we conclude that while the statutes do not define the
practice of law, they do reveal, at the very least, the
right of licensed real-estate brokers to engage in
conveyancing in the manner complained of when
it is incidental to the items of business they are
transacting.

Since it is left to the courts of this State as well
as those of most other States, to define the "prac-
tice of law" we must consider the adjudicated au-
thorities. Initially, however, a verbal distinction
must be disposed of. It is said that while convey-
ancing may be considered to be the practice of law,
the real question is whether, conceding that it is, it
should be deemed unlawful when solely incidental to
a lawful business. It has been repeatedly held that
it is not the practice of law. Under either approach
the inquiry is the same for all practical purposes.

The only Michigan decision bearing on the subject,
and then only by implication, is *Grand Rapids Bar
Association* v. *Denkema,* 290 Mich 56. In that case
the defendant was not a real-estate broker. The
Court, while recognizing that the concept of the

"practice of law" is difficult to define, said that (p 66):

"The preparation of conveyances of real estate and personal property by the defendant for others, for a consideration, comes within the usual and ordinary definition of 'practice of law.' " (Citing cases.)

However, the Court went on to cite with approval the following statement from *State, ex rel. Wright, v. Barlow,* 131 Neb 294, 296 (268 NW 95, 96) (1936):

"We do not desire to be understood as saying that the mere act of drawing a promissory note, chattel mortgage, real-estate mortgage, deed or other similar instruments would constitute the practice of law, where the person so drawing them acts merely as an amanuensis and does not advise or counsel as to the legal effect and validity of such instruments."

The defendant in the *Barlow Case* was not a licensed attorney but he had executed wills, notes, mortgages and other instruments.

The difference between the *Denkema Case* and the one at bar is that in the former the defendant appeared to be in the business of executing these instruments rather than doing so without extra compensation and as incidental to another lawful business—the situation at bar. The same can be said of the *Barlow Case.*

A consideration of cases in other jurisdictions that have passed upon similar facts reveals a divergence of opinion, though most of those that uphold plaintiffs' contention can be distinguished on facts. In *People, ex rel. Illinois State Bar Association,* v. *Schafer,* 404 Ill 45, 54 (87 NE2d 773, 778) (1949), the defendant real-estate and insurance broker executed the various instruments both incidentally to matters in which he was involved as broker *and also in other matters in which he was not so concerned.* The court adjudged the defendant guilty of contempt

of court both because it felt the preparation of such instruments involved complex considerations which only a lawyer could pass upon and because:

"The public should be protected from falling into the hands of one not skilled in the laws of conveyancing when seeking advice or service having to do with real-estate titles."

Similarly, in *Washington State Bar Association* v. *Washington Association of Realtors,* 41 Wash2d 697 (251 P2d 619) (1952), the court enjoined a broker from the preparation of instruments, especially those evidenced by a deed which contained a mortgage clause contrary to the intent of the parties. The court said that such legal instruments cannot be considered simple. A concurring opinion stated that the selection of the proper form constituted the illegal practice of law. Another theory was advanced in *Keyes Co.* v. *Dade County Bar Association* (Fla 1950), 46 So2d 605, 606, where a divided court in the prevailing opinion enjoined a realtor from preparing instruments of conveyance on the basis of an analysis of the Florida real-estate broker statute which they concluded only allowed a realtor to perform that type of work which was "preliminary in nature," *i.e.*:

"He performs his service when he produces a prospective purchaser ready, willing, and able to buy or procures from the purchaser a binding contract."

In a dissenting opinion the realtor was given broad powers. See, also, *Commonwealth of Virginia and Virginia State Bar* v. *Jones & Robins, Inc.,* 186 Va 30, 42, 43 (41 SE2d 720, 727) (1947), where a real-estate broker, who charged a separate fee for preparation of deeds and conveyances, was enjoined by the court which said that:

"The deed or legal instrument by which title to real estate passes must be under seal and signed and acknowledged by the owner * * * to which instrument the broker is not a party as agent or otherwise * * * it is more than a contract; it is a muniment of title and must become a matter of permanent record."

It should be noted that this also was a 5–2 decision and that the court was bound by a clear definition of the "practice of law" the key word of which for purposes of the decision was "contract." In addition compare *In re Gore,* 58 Ohio App 79 (15 NE2d 968) (1937), upholding plaintiff's contention, with *Gustafson* v. *V. C. Taylor & Sons, Inc.,* 138 Ohio St 392 (35 NE2d 435) (1941), which modified *In re Gore, supra.*

Despite the foregoing authorities, we are impressed with the lower court's unanimous opinion reached by the 3 judges sitting *en banc* in the Ingham circuit court and also the reasoning in a very large number of cases which reach a conclusion opposite to plaintiffs' contentions. They appear to be in the majority.

One such is the recent case of *Hulse* v. *Criger,* 363 Mo 26 (247 SW2d 855) (1952), in which the defendant, realtor, executed conveyancing forms in connection with transactions in which he was the broker, he, however, making a separate charge therefor. In proscribing the charge therefor but not the practice of executing the forms, the court said (p 44):

"Likewise, general warranty deed and trust deed forms are so standardized that to complete them for usual transactions requires only ordinary intelligence rather than legal training. They are in fact less complicated than contracts for sale of real estate. We know that these forms are furnished to the public at the offices of recorders of deeds through the State. We think the preparation of these in-

struments in closing transactions in which a real-estate broker is acting as broker is so closely related to the transaction and the business of the broker as to be practically a part of it and that he is not engaging in unlawful practice of law to prepare them under such circumstances. The same thing is true of ordinary short term leases, notes, chattel mortgages and trust deeds in transactions which the broker procures."

We believe that the determining point is set forth in the further statement of the Missouri court, when it said (p 45):

"We think the guiding principle must be whether under the circumstances the preparation of the papers involved is the business being carried on or whether this really is ancillary to and an essential part of another business."

The Missouri court went on to refute the reasoning of the Florida court in *Keyes Co.* v. *Dade County Bar Association, supra,* when it stated (p 43):

"It is true that a real-estate broker has earned his commission when he has found a purchaser ready, willing and able to take the property at the price and upon the terms fixed by the owner. However, we know as a practical matter that he does not get his money at that time; and often there are several written offers and counteroffers which result in a contract before it can be said that a purchaser has been found. It is a matter of great importance to the broker to get an agreement in writing and then to close the transaction as promptly as possible, because as a matter of practice that is usually when he gets paid. Thus he is personally concerned in the transaction and actually he is acting partly in his own interest in getting a contract signed and the deal closed."

In *Cowern* v. *Nelson,* 207 Minn 642, 646, 647 (290 NW 795, 797) (1940), the Minnesota unauthorized

practice-of-law statute excepted therefrom brokers drawing papers incident to sales, leases, et cetera. Refuting the argument that such a statute encroached upon the court's jurisdiction over what constitutes the practice of law, the court said:

"The line between what is and what is not the practice of law cannot be drawn with precision. Lawyers should be the first to recognize that between the two there is a region wherein much of what lawyers do every day in their practice may also be done by others without wrongful invasion of the lawyers' field. We think that ordinary conveyancing, part of the everyday business of the realtor, is within that region and consequently something of which the legal profession cannot under present circumstances claim that the public welfare requires restraint by judicial decree."

The court further stated:

"We do not think the possible harm which might come to the public from the rare instances of defective conveyances in such transactions is sufficient to outweigh the great public inconvenience which would follow if it were necessary to call in a lawyer to draft these simple instruments."

In *Childs* v. *Smeltzer*, 315 Pa 9 (171 A 883, 885) (1934), the defendant was a notary public and a stenographer who advertised herself as a conveyancer. In the course of the opinion, which enjoined the practices of the defendant, the court stated, in answer to briefs *amici curiae* of realty boards (pp 14, 15):

"There can be no objection to the preparation of deeds and mortgages or other contracts by such brokers so long as the papers involved pertain to and grow out of their business transactions and are intimately connected therewith. The drafting and execution of legal instruments is a necessary concomitant of many businesses and cannot be consid-

ered unlawful.   \*   \*   \*   A real-estate broker is not prohibited from drawing a deed of conveyance, or other appropriate instrument relating to property of which he or his associates have negotiated a sale or lease."

Other courts have made similar statements, which, though not in cases directly involving realtors, confirm the basis of our decision. In the case of *People* v. *Title Guarantee & Trust Co.*, 227 NY 366, 380 (125 NE 666, 670) (1919). Pound, J., stated in a concurring opinion:

"This does not imply that a real-estate broker may not prepare leases, mortgages and deeds, or that an instalment house may not prepare conditional bills of sale, in connection with the business and as a part thereof. The preparation of the legal papers may be ancillary to the daily business of the actor or it may be the business itself. The emphasis may be upon the services of the broker or the business of the trader or it may be upon the practice of law."

Similarly in *Cain* v. *Merchants National Bank & Trust Co.*, 66 ND 746, 755 (268 NW 719, 724) (1936), the court, when considering various deeds and mortgages which defendant executed incident to its business of making loans and selling the resultant mortgages to other customers, said:

"The group of instruments represented by exhibit 91 appear to be simple instruments which were drawn as an incident to the defendant's loan business, or in connection with settlements with the bank, and cannot reasonably be said to constitute practicing law."

The court concluded (p 754):

"A careful study of the many decisions of the courts relative to what constitutes practicing law when applied to the facts in this case, leads us to the conclusion that a person who is not a member

of the bar may draw instruments such as simple deeds, mortgages, promissory notes, and bills of sale when these instruments are incident to transactions in which such person is interested provided no charge is made therefor. These simple instruments are usually prepared upon or with the aid of printed forms and seldom involve a high degree of legal skill."

And in *In re Matthews*, 58 Idaho 772 (79 P2d 535, 539) (1938), the court, in considering the preparation for a charge of deeds, mortgages, et cetera, by an insurance and real-estate agent, said (pp 779, 780):

"It would be an anomaly to hold that every individual, abstracter, realtor, banker, title insurance company, trust company, et cetera, who fills out a blank deed, mortgage, bill of sale, contract, or such instrument and receives compensation therefor is engaged in the practice of law   *   *   *   and it appears that the statement or matter, appearing in *In re Eastern Idaho Loan & Trust Co.*, 49 Idaho 280, 285, 286 (288 P 157, 73 ALR 1323), as follows: 'Such work as the mere clerical filling out of skeleton blanks or drawing instruments of generally recognized and stereotyped form effectuating the conveyance or incumbrance of property, such as a simple deed or mortgage not involving the determination of the legal effect of special facts and conditions, is generally regarded as the legitimate right of any layman. It involves nothing more or less than the clerical operations of the now almost obsolete scrivener.'   *   *   *   should be invoked as the rule controlling in this case."

See, also, the dissenting opinions in *Keyes Co. v. Dade County Bar Association, supra,* and *Commonwealth of Virginia and Virginia State Bar v. Jones & Robins, Inc., supra,* which support our conclusions.

With the growth of this State and particularly in

urban centers with their rapidly increasing populations making purchases of homes and land, a very conservative estimate would be that many thousands of documents of the type here under consideration are executed each year. Plaintiff claims that the functions of brokers are simply to find a willing seller and a willing buyer and that thereafter it becomes necessary for duly licensed attorneys to complete the transaction. The difficulty is that such contracts must be in writing and duly signed and neither the seller nor the buyer is bound until a contract of sale is signed. Practically speaking the broker is interested in the transaction up to and including the consummation of the sale. And, as pointed out by the defendants, a large volume of the business is transacted after working or business hours when attorneys are not available. It would cause extra expense and great inconvenience to the parties to have to wait until an attorney could be secured under such circumstances and possibly the willing party (buyer or seller) might not sign after a lapse of hours or days, or more, until the services of an attorney of the parties' choice would be available. The claims of the plaintiffs are unrealistic and impractical.

According to plaintiffs' claim it would be necessary to have an attorney present or at beck and call at all times when sales, which under the statute of frauds must be in writing, are made. This might result in unnecessary expense or possibly also making attorneys become realtors in order to legally close a contract for the sale of real estate. Such a course by the latter would be improper if a fee were exacted for such services. This is not an issue in this case. There cannot be any objection to a licensed broker doing such work without compensation when it is incidental to his business.

A decree in accordance with this opinion will be entered in this Court. As a public question is involved, no costs will be allowed.

Carr, C. J., and Boyles, Reid, Dethmers, and Kelly, JJ., concurred with Butzel, J.

Sharpe, J. (*dissenting*). I am unable to concur in the opinion of Mr. Justice Butzel. He holds that real-estate brokers, in connection with properties in which their services are enlisted, may fill in standard printed forms of agreements of purchase and sale, deeds, land contracts, mortgages, assignments of mortgages, notices to quit, et cetera, as printed by stationers.

In *Grand Rapids Bar Association* v. *Denkema,* 290 Mich 56, 63, 64, we approved of the following:

"The practice of law is not confined to the practice in courts of the State, but it includes the preparation of pleadings and other papers incident to any action or special proceeding in any court or other judicial body, conveyancing, the preparation of all legal instruments of all kinds whereby a legal right is secured, the rendering of opinions as to the validity or invalidity of the title to real estate or personal property, the giving of legal advice in any action taken for others in any matter connected with the law. *Boykin* v. *Hopkins,* 174 Ga 511 (162 SE 796).

" 'Practice of law under modern conditions consists in no small part of work performed outside of any court and having no immediate relation to proceedings in court. It embraces conveyancing, the giving of legal advice on a large variety of subjects, and the preparation and execution of legal instruments covering an extensive field of business and trust relations and other affairs. Although these transactions may have no direct connection with court proceedings, they are always subject to become

involved in litigation.' *Opinion of the Justices,* 289 Mass 607, 613 (194 NE 313)."

It must be conceded that the services rendered by the defendants is that of "conveyancing," a subject taught in practically all law schools and in many States a required subject for candidates for admission to the bar.    The legislature of this State by statute has established the public policy of Michigan as to who may and who may not practice law.    The qualifications and requirements have been set high in order to afford ample protection to the public. See CL 1948, § 601.52 (Stat Ann 1953 Cum Supp § 27.72).    A real-estate broker or salesman is required:

"To pass an examination establishing, in a manner satisfactory to the commission, that the applicant has a fair knowledge of the English language, including reading, writing, spelling and elementary arithmetic, a satisfactory understanding of the fundamentals of real estate practice and of the laws and principles of real estate conveyancing, deeds, mortgages, land contracts, leases, the obligations of a broker to the public and his principal, and the provisions of the Michigan statutes defining, regulating and licensing real estate brokers and salesmen." (CL 1948, § 451.208 [Stat Ann 1953 Cum Supp § 19.798].)

It clearly appears that the standards required for attorneys and real-estate brokers stand in sharp contrast insofar as educational qualifications are concerned.    It is also well known by practicing attorneys that in practically every real-estate transaction the attorney is required to give advice concerning some phase of the transaction.

While it is generally conceded that the practice of law is difficult to define, yet we approved of the following in *Detroit Bar Association* v. *Union Guardian Trust Company,* 282 Mich 216, 221, 222:

" 'Counsel and advice, the drawing of agreements, the organization of corporations and preparing papers connected therewith, the drafting of legal documents of all kinds, including wills, are activities which have long been classed as law practice.' *People* v. *Alfani,* 227 NY 334, 338 (125 NE 671). * * *

" 'It is too obvious for discussion that the practice of law is not limited to the conduct of cases in courts. According to the generally understood definition of the practice of law in this country, it embraces the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before judges and courts, and in addition conveyancing, the preparation of legal instruments of all kinds, and in general all advice to clients and all action taken for them in matters connected with the law. An attorney at law is one who engages in any of these branches of the practice of law.' *In re Duncan,* 83 SC 186 (65 SE 210, 24 LRA NS 750, 18 Ann Cas 657)."

In the above case we held that the drawing of wills by corporations or laymen constitutes unauthorized practice of law. Courts are not in agreement as to what constitutes the practice of law, but it is generally accepted that if the service performed requires legal skill or more than ordinary business intelligence it constitutes the practice of law. It is of no importance that such services are not paid for. It is also a well-known fact that a substantial number of cases have been and are in the courts of our State where the principal cause of the litigation was the incompetent preparation of a legal instrument by a layman on behalf of another layman.

In my opinion the preparation of deeds, mortgages and contracts in real-estate transactions are not routine, requiring no legal skill. Such acts often involve a correct description of the property, the

assumption of a mortgage, the nature of the title to be conveyed, where joint owners or title by the entirety, and whether there may be lien on the property for unpaid taxes or other reasons. The selection of the appropriate form or blank for the real-estate transaction for others or the filling out of such blanks constitutes the practice of law and can only be rendered by those entitled to practice law. The decree enjoining the defendants from attempting to practice law through its agents and employees before any circuit court commissioner or in any court or judicial body in the State of Michigan should be affirmed.

A decree should be entered enjoining and restraining defendants from preparing, drafting or filling in printed forms of options, deeds, land contracts and mortgages, regardless of whether or not charges for such services are made or are rendered gratuitously.

SMITH, J., took no part in the decision of this case.